(Decided 18th June, 1872.)

---

HENRY M. SPICKLER *vs.* JAMES S. MARSH, and others, trading as MARSH BROTHERS.

## *Sale or Return.*

Where a party agrees to take a reaper and mower on trial, with the understanding that if it suit him, he will pay the price demanded, and if it do not, he will return it to the place whence he took it, and he fails to return it, or give any notice of his dissatisfaction with its performance to the vendor, the latter is justified in treating the transaction as an absolute sale, and entitled to recover the contract price.

APPEAL from the Circuit Court for Washington County.

This suit was brought by the appellees to recover from the appellant the price of a reaper and mower sold to him.

Spickler *vs.* Marsh Bros.

*Exception:* The plaintiffs offered the following prayers:

1. If the jury find that the plaintiffs, by their agent, sometime in June, 1864, sold to the defendant one of their reapers, commonly called the "Combined Reaper and Mower and Self-Raker," for the sum of $185, upon the terms following, to wit: That the said reaper was to answer the purpose of mowing, cutting grain and self-raking it, and that the defendant was to take it from the railroad in Greencastle, where it then was, to his farm, and try it by cutting his crop of grass, and if it suited him, then to try it in his wheat at the approaching harvest, and after such trials, if it did not suit him or answer his purpose, then the defendant was to return the same to the railroad in Greencastle, from whence he took it. And shall further find, that the defendant took such machine to his farm under the contract aforesaid, if so found, and tried it, and did not return it to the railroad in Greencastle from whence he took it. And shall further find, that afterwards, sometime in the month of September or October following, the plaintiffs called upon the defendant for a settlement for such reaper, and the defendant declined to settle therefor, but it was then understood and agreed between them that the defendant should put the said machine in the dry, keep it till the next harvest and try it, and if it suited him he should pay for it, and if not he should return it, and that the defendant did so keep the machine and never returned it, then the plaintiffs are entitled to recover, although the jury should further find that said reaper did not answer the purpose.

2. [Substantially the same as the first to the words "settle therefor," whence it proceeded as follows:] And then and there it was further agreed between the plaintiffs and defendant, that if he continued farming he should put such machine in the dry and try it at the harvest of 1865, and if it then worked, then he was to pay for it, and if it did not work, then to return it. But shall further find, that afterward and before said harvest of 1865, the defendant sold said machine, without the consent of the plaintiffs or their agent, to a third

party. And shall further find, that the defendant never tried the same at such harvest in 1865, and that he never did return it, then the said sale is an election on the part of the defendant to make the said machine his absolute property, and the plaintiffs are entitled to recover, although the jury shall believe the machine did not answer the purpose, and that the defendant discontinued farming.

The Court (MOTTER and PERRY, J.) granted the. prayers, and the defendant excepted; and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, BOWIE, GRASON, MILLER and ROBINSON, J.

*Attorney General Syester*, for the appellant.

The facts embodied in the plaintiffs' prayers present only a partial view of the case. The defendant proved that the machine was "*warranted.*" That at the time of the sale or contract, "*the qualities and capacities of the machine were represented to be such that it would give satisfaction.*" That *it would cut or mow grass, and reap and rake off in a satisfactory manner the grain cut in the fields.* And also that such representations were "made for the *purpose* of *assuring* the defendant of their being true of the machine, *and as inducements to him to purchase.*" And also that "*the representations aforesaid were received and relied on*" by the defendant, "and formed *the inducement to the contract.*" There was evidence also to show that the machine was *worth less than the contract price.* That it "*would not mow in grass.*" That it did "not *rake off the grain,*" &c.

All these facts were ignored by the Court as having nothing to do with the case. But the appellant is of the opinion that they were most material and important to be considered by the jury.

The representations made for the purpose of assuring the defendant of the qualities of the machine, and as inducements

to him to purchase, together with the reliance of the defendant upon them, and *their forming the inducement* to the purchase, constituted an express warranty that the machine would operate as represented. *Osgood vs. Lewis,* 2 *H. & G.,* 495, 518; *Cross vs. Gardner,* 1 *Carth.,* 90; *Medina vs. Stoughton,* 1 *Ld. Ray.,* 593; *Pasley vs. Freeman,* 3 *Term R.,* 57.

If an express warranty were actually made, and there is a breach of it, as the proof shows in this case, the defendant was not *bound to return,* or *offer to return* the *property.*

It is plain, from the instructions given by the Court, that it proceeded on the idea that the defendant's responsibility was made clear and certain for the value of the machine, because there was neither a return nor offer to return. But that would have amounted to a recission of the contract; whilst it was wholly overlooked by the Court, that the defendant could stand on his contract—affirm it, and offer the breach of the warranty in abatement or recoupment of the plaintiffs' demand.

The appellant stands on his contract; had he paid the money, then, in an action for breach of the warranty, (which is but an *affirmance of the contract,*) the measure of his damages would be "the difference between its value with the defect warranted against, and the value which it would have borne without the defect." *Mayne on Damages,* 88; *Lane, Adm'x., vs. Lantz,* 27 *Md.,* 216.

But he is not driven to his cross-action; he may recoup his damages in an action against him for the contract price. This is now the well established doctrine, and is always allowed in order to prevent circuity of action. *Franklin vs. Long,* 7 *G. & J.,* 407; *Taymon vs. Mitchell,* 1 *Md. Ch. Dec.,* 496; *Beall vs. Pearre, Adm'r.,* 12 *Md.,* 550, 557; *Warfield vs. Booth,* 33 *Md.,* 63, 71.

The instructions were partial and limited in their character. The whole case was made to depend upon the single question as to whether there was or was not a sale, and the jury were manifestly misled by these instructions, and brought to the

conclusion that there was no other subject or matter for their consideration than the partial and one-sided view of the case embodying the plaintiffs' proof. If a Court assume to instruct, it must direct upon the whole case, and unfold the law of the entire case.

The plaintiffs' prayers should have *been rejected*, because they embodied but one side of the case, and assumed that nothing else was in proof before the jury.

The failure to return the property under the contract here was a circumstance entitled to weight, as reflecting on the question of fact whether the machine operated in a sufficient and satisfactory manner. But it did not constitute in law an estoppel on the defendant to show that the machine was valueless, or of little value.

But, by its instructions, the Court, by ignoring all other circumstances in the case, told the jury, in effect, that the failure to return, &c., entitled the plaintiffs to the full contract price to the same extent as if there had been no warranty, no breach, and the machine had been found equal to all the representations made respecting it, and equal to the expectations of the defendant, which formed the inducement to the purchase.

Up to the time determined between the parties for a return there was *no sale at all*. The machine was simply on trial; the defendant could have returned it, had it been even bett_r than represented.

But when he elected not to return, and thereby became chargeable on his contract, he was chargeable only with the actual market value of the machine.

*William T. Hamilton*, for the appellees.

The transaction as shown by the evidence in the case, was a *sale or return* of the machine in question; and if in fact it did not perform according to the representations of the vendors, or if it were unsuitable for the purpose intended, and the vendee failed to return at the stipulated time, or in a rea-

sonable time, the sale became absolute, and the vendors were entitled to recover. *Cash vs. Giles*, 3 *Carr. & Payne*, 407; *Moss vs. Sweet*, 3 *Eng. Law and Eq.*, 211; *Milner vs. Tucker*, 1 *Carr. & Payne*, 15; *Hilliard on Sales*, (2d *Ed.*,) 314, sec. 22; *Chitty on Contracts*, (*side page*,) 350, *note*; 1 *Parsons on Contracts*, 450, (*top page*.)

But in this case there was a specific contract for a return of the machine, if it did not suit the vendee after trial in his grass and grain at the following harvest, which was afterwards renewed; but in both instances the vendee failed to exercise this option, and afterwards assumed entire control and ownership over the property, by selling it at public sale with his other farming implements. The property in this machine passed to the vendee when he took possession of it under the contract of sale, subject to his option to return it within a fixed time. He not only failed to make such return, but treated the property as his own by selling it at public sale, and thereby rendered the sale absolute.

BRENT, J., delivered the opinion of the Court.

We do not think there is any difficulty about this case. The transaction, as disclosed by the proof, constituted what is called "a sale or return." The appellant agreed with the appellees to take their reaper and mower, the price of which was $185, and try it in cutting grass and reaping his wheat. If after such trial he did not like it, he further agreed to return it. He tried it at the harvest of 1864, but not being satisfied he agreed in the fall of that year to give it a further trial at the harvest of 1865, and if not then satisfied to return it to a certain railroad station mentioned in the contract. He did not return it, or give the appellees any notice that he was dissatisfied with its performance.

It is true the machine was represented to him as one that would do the work, for which it was designed, well and effectually. He did not however take it upon this representation, but by electing to take it upon trial, determined

Spickler *vs.* Marsh Bros.

to be himself the sole judge of its merits. The sale was one at his option, and if he did not comply with his part of the agreement he cannot now be heard to complain. By this agreement he was bound to return the reaper within a reasonable time after the harvest of 1865, or keep it at the price stipulated. He never did return it, and the appellees are fully justified in treating the sale as absolute. This doctrine is established by the authorities referred to in the appellees' brief, and also by the case of *Dewey vs. Erie Borough,* 14 *Penn.,* 211. This case was a suit upon a note at twelve months, for the purchase of a town clock, "conditioned however that the clock performs to the satisfaction of the burgess and town council." The clock was defective, but there had been no offer to return it. In deciding the case GIBSON, C. J., says: "The transaction before us is analagous to a transaction between merchants called 'sale or return,' by the terms of which, the party to whom the goods are sent is bound to return them with notice of his dissent within a reasonable time, or keep them on the terms of the offer; or it is perhaps strictly a conditional sale, of which the same principle is an element. Such was the sale in *Humphreys vs. Carvalho,* 16 *East,* 45, and many other cases, which it is unnecessary to quote, the principle being settled. The defendant promised to pay the price at the expiration of a year, on condition that the clock should perform to the satisfaction of the burgess and town council or their successors. The corporation, consequently, had a year to signify its determination. This is not the case of warranty, and it is immaterial whether the clock performed well or ill; it was the business of the burgess and council to judge of that and keep the clock or return it at the proper time." These principles are quite applicable to the facts of the case before us, and in view of them the instructions granted by the Court below are without error.

*Judgment affirmed.*

(Decided 18th June, 1872.)