Delamater & Robinson *vs.* Chappell, *et al.*, Ex'rs

(Decided 8th March, 1878.)

---

CORNELIUS H. DELAMATER and GEORGE H. ROBINSON, trading as C. H. DELAMATER & Co. *vs.* ALCINDA M. CHAPPELL, and others, Executors of PHILIP S. CHAPPELL.

*Oral evidence of previous Colloquium or understanding of the parties to a Written contract, inadmissible—Acceptance under a Sale conditional on Approval of the articles sold—Conditional sale made Absolute by the acts of the Purchaser.*

Where a contract for the purchase of certain chattels has been talked over and then reduced to writing in the form of a correspondence between the parties, it must be presumed, and that conclusively, that such writing expressed the entire contract, and all oral evidence of previous *colloquium*, or understanding of the parties must be excluded.

Delamater & Robinson *vs.* Chappell, *et al.*, Ex'rs.

The terms of a contract for the purchase of a steam engine, &c., having been talked over, were reduced to writing in the form of a correspondence between the parties. In a letter of the 23rd of July, 1870, S. the purchaser informed the vendors that he would accept the proposition of their agent for the engine, &c., the same to be built, delivered and set-up on the premises of S., in the city of Baltimore, at the expense of the vendors at the price mentioned—"the said engine to be run on thirty days trial and to give perfect satisfaction." In consideration of which S. agreed to pay $1000 in cash at the expiration of the thirty days, (*if the engine proved satisfactory, and if not, to be made so, or moved at the expense of the vendors,*) and to give two notes of one thousand dollars each, at six and eight months from the date of the cash payment, with interest. In response to this proposition the vendors said by their letter of the 3rd of August, 1870, that they would furnish the engine in thirty days, and would deliver and put it up as per letter of S. of the 23rd of July, 1870, for $3000, the notes to be four and six months instead of six and eight months. On the receipt of this letter of the 3rd of August, 1870, S. informed the vendors that he was ready for the engine; and the engine and pump were accordingly put up by the vendors in October, 1870, and were retained in the possession of, and used by S., until January, 1874, when he surrendered the premises to his landlord, and in consideration of the release of all claim for rent due, he transferred to him all the machinery, including the engine. The premises, including all the machinery thereon, were afterwards leased to another person. It was in evidence that S. promised to pay for the engine, though he never said he was satisfied with it, and never accepted it—that the engine never worked to the satisfaction of S. There was no evidence that S. ever definitely rejected the engine, or that the vendors ever demanded its surrender with a view to its removal. In an action by the vendors against the executors of the assignee of S. to recover the value of the steam engine, &c., it was HELD:

1st. That the time of the use and control of the machinery by S. in the absence of any new agreement, gave rise to the presumption, as matter of law, that the same had been accepted.

2nd. That if it were conceded that S. had a continuing option to reject the machinery, as not being satisfactory, that option was determined and put an end to, and the sale became absolute, when he assumed to himself the right to assign the property to a third person.

3rd. That the plaintiffs were not entitled to recover.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*John T. Mason, R.*, for the appellants.

That part of the evidence of Reynolds which proves that "it was also agreed that Delamater & Co. were to own the engine until accepted and paid for by Stow—and the pump was under the same conditions''—related to a matter about which the writings, subsequently produced, were silent; it occurred prior to the writings; does not contradict or vary them, and was therefore admissible as "a collateral parol agreement, an independent fact, which does not *interfere with the terms of the written contract.*" *Basshor vs. Forbes*, 36 *Md.*, 166 ; *Creamer vs. Stevenson*, 15 *Md.*, 211 ; *McCreary vs. McCreary*, 5 *G. & J.*, 147.

The defendants' prayer, which was granted, is too general under the Code to present any question for review by this Court. *Art.* 5, *sec.* 12, *Supt.* 1861-7.

The taking of the assignment from Stow by Chappell, and the assumption of property in, and the right to dispose of, the machinery by Chappell in conveying it to Short, or either of these acts alone, was in itself a conversion, without proof of a demand and refusal, and whether Chappell knew that the machinery belonged to the plaintiffs or not; the knowledge of Chappell would only be material if exemplary damages were asked. 1 *Chitty's Pleading*, 142 ; 2 *Hilliard on Torts*, 246, 254, 262; *Maxwell vs. Harrison*, 8 *Geo.*, 61 ; *McCombie vs. Davis*, 6 *East*, 540 ; *Harker vs. Dement*, 9 *Gill*, 17 *and* 18; *Wansborough vs. Maton*, 4 *Ad. & Ell.*, 884 ; *Goddard vs. Gould*, 14 *Barb.*, 662-6 ; *Shell vs. Heywood*, 4 *Harris*, 523, 530 ; *Thomas vs. Sternheimer*, 29 *Md.*, 272 ; *Winner vs. Penniman*, 35 *Md.*, 163.

The measure of damages in trover is the value of the goods at the time of the conversion, with interest from that date. *Hepburn vs. Sewell*, 5 *H & J.*, 212 ; *Thomas vs. Sternheimer*, 29 *Md.*, 273.

*John H. Thomas*, for the appellees.

The contract between Stow and the appellants, having been reduced to writing, all parol evidence of the terms thereof was properly excluded. 1 *Greenleaf's Ev., sec.* 275.

The contract was, that "the engine was to be run thirty days on trial, and to give perfect satisfaction—if not satisfactory, to be made so, or removed at the appellants' expense." Stow had used it more than three years before Chappell bought it. The appellants had never offered to remove it, because they expected him to pay for it, but had repeatedly sent on to remedy the defective workings of it. Stow believed it could eventually be made to work satisfactorily ; had been called on by the appellants for payment after he had used it for three years, and had promised to pay for it. Under these circumstances, the title to the engine had vested in him before his sale of it to Chappell.

The appellants were entitled to the price agreed on, or the actual value of the engine. Stow's remedy, if entitled to any, was for breach of the contract to make it satisfactory, or for a deduction from the price agreed on, by way of recoupment. *Spilker vs. Marsh*, 36 *Md.*, 222 ; *Dewey vs. Erie Borough*, 14 *Penna.*, 211 ; *Humphreys vs. Carvalho*, 16 *East*, 46 ; *Benjamin on Sales*, (*1st Am. Ed.*, *sec.* 595.)

There was no proof of any demand on Chappell or the appellees, or any refusal by either, nor of actual conversion or removal of the engine or pump. He sold the engine to Short after the appellants' right to resume possession was gone. Having *then*, as against him, no right of possession, they cannot maintain trover. *Dugan vs. Mutual Benefit*

*Life Ins. Co.*, 38 *Md.*, 248–9; *Mayor and City Council of Baltimore vs. Norman*, 4 *Md.*, 352.

Chappell having acquired possession under deed from Stow, demand and refusal were necessary to render him liable in trover, even if Stow's title had been defective. *Bohn vs. Headley*, 7 *H. & J.*, 257 ; *Stewart vs. Spedden*, 5 *Md.*, 433, 448–9.

ALVEY, J., delivered the opinion of the Court.

The declaration in this case contains two counts; 1st, that the defendants' testator in his life-time converted to his own use, or wrongfully deprived the plaintiffs of the use and possession of certain chattels, that is to say, one steam engine, and one steam pump; and, 2nd, that the testator in his life-time seized, took and carried away, the chattels in the first count mentioned, and converted them to his own use. The plea was, that the said testator did not commit the wrongs alleged.

At the trial there were two bills of exception taken by the plaintiffs ; one to ruling on a question of evidence, and the other to rulings on the prayers offered for instruction to the jury.

1. *As to the first exception.*—The plaintiffs produced a witness by the name of Reynolds, an engineer, who had been an agent of the plaintiffs, by whom they proved, that in the summer of 1870, he made a contract for the plaintiffs with one Lewis Stow, by which the plaintiffs were to put up, on the premises of Stow in the city of Baltimore, an engine worth $3000, which was to be paid for at certain times, provided it was satisfactory to Stow. He also proved that the engine was never made satisfactory to Stow, and that he put up a steam pump and heater, of the value of $250, upon the same conditions that the engine was furnished. This machinery was put up in the fall of 1870. The witness further proved that the plaintiffs were to own the machinery thus put up until accepted and paid for by

Stow; that the plaintiffs ratified the contract; and that it was agreed that if the engine was not accepted, it was to be taken away whenever the plaintiffs chose. But, upon cross-examination, the witness testified that the contract was talked over, and then put into the form of a correspondence between the parties; and the letters then produced by the defendants were identified as the correspondence to which the witness referred.

At this stage of the proof, the defendants moved the Court to exclude the oral evidence given by the witness in regard to the terms of the contract; and that the terms of the contract should be ascertained exclusively from the written correspondence of the parties; and the Court so ruling, the plaintiffs excepted.

The correspondence in relation to the contract, consists of a letter from Stow of the 23rd of July, 1870, and a letter from the plaintiffs of the 3rd of August, 1870. In the former, Stow informed the plaintiffs that he would accept the proposition of Reynolds, the agent, for the engine, pump and heater; the same to be built, delivered and set up on the premises of Stow, at the expense of the plaintiffs, at the price mentioned;—"the said engine to be run on 30 days trial, and to give perfect satisfaction." In consideration of which, Stow agreed to pay $1000 in cash at the expiration of the 30 days, (*if the engine proved satisfactory, and if not, to be made so, or moved at the expense of the plaintiffs,*) and two notes of one thousand dollars each, at 6 and 8 months from the date of cash payment, with interest. In response to this proposition, the plaintiffs said, by their letter of the 3rd of August, 1870, that they could furnish the engine in thirty days, and would deliver and put it up, as per letter of Stow of the 23rd of July, 1870, for $3,000;—the notes to be 4 and 6 months, instead of 6 and 8 months. On the receipt of this letter of the 3rd of August, 1870, Stow informed the plaintiffs that he was ready for the engine; and the

engine and pump were accordingly put up by the plaintiffs in October, 1870.

These letters, being identified as the correspondence between the parties, by the plaintiffs' own witness, must be taken as the written evidence of the contract. Indeed, there is no question in regard to the genuineness of the letters, nor is it denied that Reynolds had full power to make the contract evidenced by them. But it is contended that they do not express all the terms of the contract, and that it was competent to prove by oral evidence that if the engine was not made satisfactory to Stow, and not accepted by him, it was to remain the property of the plaintiffs, with the right to take it away whenever they might think proper to do so.

This extrinsic proof is of no subsequent or collateral agreement; but of what is said to have been the agreement of the parties before it was attempted to be reduced to writing in the form of a correspondence. And as the parties agreed at the time to reduce their understandings to writing, in such terms as to import a contract, without ambiguity, it must be presumed, and that conclusively, that such writing expresses the entire contract; and all oral evidence of previous *colloquium* or understandings of the parties, must be excluded. The proof offered was not of a matter simply collateral to the contract of purchase, as contended by the plaintiffs, but would form part of the principal contract itself; and if there be a conflict or repugnancy between the written evidence and the oral evidence offered, or if the latter, not being collateral to the principal contract, add to or vary the terms of the written contract, it must be excluded. Here, the letter of Stow of the 23rd of July, 1870, evidences the terms upon which the engine was furnished, so far as the contract was executory on the part of the plaintiffs; and those terms were that the engine was to be run on 30 days trial, and to give perfect satisfaction. If, after thirty days trial, Stow was

not satisfied, the engine was either to be removed, or to be made satisfactory; and the most that the plaintiffs could claim, in respect to the time for making the engine work to the satisfaction of Stow, was a reasonable time after it was ascertained that it did not work to his satisfaction. No mere parol evidence was admissible to change or modify this stipulation; and the Court below was therefore right in excluding all the extrinsic evidence, and requiring the contract to be evidenced alone by the written correspondence. The law upon this subject is too well settled to be questioned; but if authorities were needed, the result of them, with the examples illustrative of the general principle, that parol testimony to contradict, vary, or add to that which is contained in written documents, is inadmissible, may be found well stated in 1 *Greenl. Ev.*, *sec.* 281, and 2 *Taylor's Ev., p.* 1002, *sec.* 1053. There is no error, therefore, in the first exception.

2. *As to the second exception.*—The plaintiffs then proved by the witness Reynolds, that the engine and pump were put up in the fall of 1870, and that they were retained in the possession of, and used by, Stow until January, 1874, when he transferred or assigned them to the defendants' testator, by written assignment. The witness described the engine, and testified that it never did work to the satisfaction of Stow; but he says he had talked with Stow in regard to payment, and expected him to pay for the engine and pump, but supposed that it was not convenient for him to do so. He says that he had supposed that Stow would pay, and that was the reason why the engine was not removed; that Stow promised to pay for it, though he never said that he was satisfied with it, and never accepted it.

The proof produced by the plaintiffs further shows, that Stow had rented the premises upon which this machinery was put up, of the defendants' testator, and he held and used them until January, 1874, when he surrendered

the premises to his landlord ; and, in consideration of the release of all claim for rent due, he transferred all the machinery, including the engine, to the defendants' testator, who afterwards leased the premises to another person, including all the machinery thereon.

At the close of the evidence, the plaintiffs offered five prayers, all based upon the theory that, by the construction of the contract, as contained in the letters of the 23rd of July and the 3rd of August, the sale was conditional upon Stow's approval of the engine ; and, as the engine had not been made satisfactory, and there had been no express acceptance of it, no property passed to Stow ; and that the acceptance of an assignment of the engine and pump by the defendants' testator, and his subsequent disposition of them, amounted to a wrongful conversion of the chattels, and that no demand and refusal were necessary.

On the part of the defendants there was but a single prayer offered, and that was that the plaintiffs had offered no evidence legally sufficient to maintain either count of their declaration, and that the verdict should be for the defendants. All the· plaintiffs' prayers were refused, and that offered by the defendants was granted, and the verdict rendered accordingly.

Without stopping to inquire whether the instruction given by the Court be obnoxious to the objection taken to it, that it is too general and indefinite, the real question in the case, assuming the truth of all the evidence offered by the plaintiffs, is, whether the property in the engine and pump passed to Stow under the contract, and the subsequent dealing in relation to it?

The engine and pump, as already stated, were put up in October, 1870, and they continued in the use of Stow until January, 1874, when he assigned them to the defendants' testator. Under the contract, as evidenced by the letters, the engine was to be run on thirty days trial, and

if, at the end of that time, it was not satisfactory, it was either to be removed, or to be made satisfactory within a reasonable time.

The principle of contracts of sale on trial or approval is well settled; and while, in such case, there is no sale until the approval is given, either expressly or by implication resulting from keeping the goods beyond the time allowed for trial; yet the failure to return, or the continued use and control of the articles after the time specified for trial, makes the sale absolute, in the absence of some new agreement upon the subject. *Benj. on Sales,* (1*st ed.*,) 483; *Humphries vs. Carvalho*, 16 *East*, 45; *Ellis vs. Mortimer*, 1 *B. & P. N. Rep.*, 257; *Spickler vs. Marsh*, 36 *Md.*, 222.

Here, as we have seen, the machinery was in the use and control of Stow for more than three years, and there is no evidence of any new agreement for any such extension of time for trial; nor is there any evidence that Stow ever definitely rejected the engine, or that the plaintiffs ever demanded its surrender with a view to its removal. On the contrary, the proof is, that the plaintiffs demanded payment of Stow, and that he promised to pay. The time of the use and control of the machinery by Stow, in the absence of evidence of any new agreement, gives rise to the presumption, as matter of law, that the machinery had been accepted; and if it were conceded that he had a continuing option to reject the articles, as not being satisfactory, that option was determined and put an end to, and the sale became absolute, when he assumed to himself the right to assign the property to a third person. By that act, he treated the property as his own; and it concluded him as to any election he might have to reject the articles, as not complying with the condition upon which they were sold to him.

Upon the whole case, we think the Court below was entirely correct in rejecting the prayers offered by the

plaintiffs ; and there is nothing in the evidence that would justify this Court in reversing the judgment and awarding a new trial.

*Judgment affirmed.*

(Decided 26th March, 1878.)