## MISSOURI SMOKE PREVENTER COMPANY v. CITY OF ST. LOUIS, Appellant.

### Division One, June 29, 1907.

1. **PRACTICE: Instructions In Law Case.** In a law case tried to the court sitting as a jury the force of instructions is spent on showing the theory of the trial court; and when that is shown by the court's findings and conclusions, refusal of certain instructions asked by appellant is of no moment.

2. **SALES: Character of Sale: On Trial: Smoke Consumer: To Meet Certain Tests.** A sale of devices for consuming smoke and to prevent the emission of black or dense smoke from defendant's waterworks' furnaces, made in pursuance to calls for bids containing elaborate specifications, upon terms that the successful bidder should have sixty days to install the devices and defendant sixty days to test their efficiency, and if not found satisfactory to the water commissioners they were to be rejected, but if satisfactory they were to be paid for by defendant, does not constitute a case where title to chattels admittedly passed from plaintiff to defendant and where defendant, when sued for the purchase price, claims damages for broken warranties, express or implied, running with the chattel; nor is it a case of sale by sample, where the thing delivered did not come up to the sample; nor one where the thing sold had no value; and hence the law of such cases is not applicable. As the sale did not at the outset pass title out of plaintiff, and did pass it, if at all, only *sub modo*, it was such a sale as is spoken of in the books as "a sale on trial," or "sale or return," or "sale if satisfactory."

3. ————: **On Trial: Smoke Consumer: Time to Test: Time of Essence: Failure to Test.** Although the contract did not expressly make time of its essence, yet if the devices for consuming smoke were sold to the city on trial, and the contracts expressly provided that the city was to have sixty days in which to test and determine their efficiency and if found satisfactory they would then be paid for, and if not no payment was to be made, time became of the essence of the contract by fair implication and the manifest intention of the parties. **And if**

the city did not within the specified time make the tests, and no reasonable excuse for the delay appears, it must pay for them, even though it afterwards made the tests and they were unsatisfactory.

4. ———: ———: **Notice of Disapproval.** The seller of an article "on trial," is entitled to reasonable notice of disapproval, and what is reasonable notice is ordinarily a question of mixed law and fact; and in this case, it is held the trial court sitting as a jury did not err in holding that, under the facts, a notice given eight days after the time limit of sixty days in which to make tests had expired, was not reasonable notice.

5. ———: ———: **Satisfaction Implied.** Where the city under the contract of sale was to be the sole judge of the fitness and quality of the smoke consumer devices sold, and reserved the right to pay on being satisfied after making tests, the city's satisfaction and acceptance will arise by implication from its failure to make the tests within the time specified and to give notice of its rejection within reasonable time.

6. ———: ———: ———: **Counterclaim: Guaranty Deposit.** Where the title to the devices passed to the buyer because of failure to notify the seller of his dissatisfaction and to remove them within a reasonable time, and the buyer is for those reasons bound to pay, then the buyer's counterclaim, based on the theory that the seller was obliged to remove them and that the buyer was damaged to the amount of the seller's deposit to guarantee satisfaction and to remove the devices if unsatisfactory, must of necessity fail, and the deposit must also be returned.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*Charles W. Bates* and *Benjamin H. Charles* for appellant.

(1) This was an executory contract on express conditions. The trial court found these conditions were unfulfilled, and therefore no liability could arise. Plaintiff's express guaranty that its device possessed certain qualities and would produce certain effects was more than a mere warranty. It was a condition precedent to any obligation on the part of defendant. Pope v. Allis, 115 U. S. 363, cited in Gaus v. Magee,

42 Mo. App. 313; Norrington v. Wright, 115 U. S. 188; Peace River Phosphate Co. v. Grafflin, 58 Fed. 550; Rubin v. Sturtevant, 80 Fed. 932; Holmes on The Common Law, pp. 335, 336; Anson on Contracts, pp. 300, 301. Defendant's declaration of law numbered 3 ought, therefore, to have been given. Plaintiff's action is based on an executory contract of sale which was to be consummated on the fulfillment by plaintiff of certain specified "conditions" and "guarantees." Plaintiff failed to prove that these conditions had been fulfilled. No liability therefore attached. The trial court, on the other hand, rendered judgment as for breach of an executed contract of sale. (2) The judgment below reads out of the contract the italicized words of the following clause: "Full payment will be made after sixty days' test, if all the conditions herein have been complied with, and provided the apparatus and the operation of same is satisfactory to the water commissioner in every respect." (3) The contract made defendant's water commissioner an arbiter to determine whether plaintiff had complied with the contract. And plaintiff could, in no event, recover, without proof of his approval. Williams v. Railroad, 112 Mo. 489. (a) Plaintiff failed to establish that the water commissioner was satisfied with the operation of its device. Williams v. Railroad, 112 Mo. 463; Chapman v. Railroad, 114 Mo. 549; Dinsmore v. Livingston County, 60 Mo. 244; McCormick v. St. Louis, 166 Mo. 315. (b) Defendant established the contrary, viz.: that the water commissioner was never, at any time, satisfied. This was indicated very clearly to plaintiff after the preliminary tests of February 11, and also by a formal letter only eight days after the expiration of the period arbitrarily fixed by plaintiff. (c) Not only so. Defendant further showed that the water commissioner's conclusion was a just one on all the facts. (4) The device would have been rejected

by the water commissioner on the preliminary test of February 11, except for plaintiff's request for further tests. Plaintiff cannot, therefore, be heard to complain. Skeen v. Springfield, etc., Co., 34 Mo. App. 499; Lucy v. Moufflet, 5 Hurls. & Norman 299. (5) 1. A vendee is not bound to accept that which he did not intend to buy. Rubin v. Sturtevant, 80 Fed. 932. 2. But an acceptance may be evidenced in either one of two ways: First, by expressed words, or, second, by the conduct of the party, as by actual use for an unreasonable time beyond a stipulated period, or beyond a period sufficient to ascertain whether the warranty has been complied with. In the case at bar: (a) There was no express acceptance. (b) Acceptance could not be implied from conduct, because the city never actually used the device. It was more of a nuisance than otherwise. (c) But assuming that the sixty day period began when the device was thus imperfectly installed, defendant still had a reasonable time after the expiration of said sixty days within which to accept or reject. Eight days, as compared with sixty, is not unreasonable. Branson v. Turner, 77 Mo. 494, where two weeks were held not unreasonable. Tower v. Pauley, 51 Mo. App. 75, where a year was held unreasonable; Manley v. Crescent, etc., Co., 103 Mo. App. 140, where five months were held unreasonable.

*Holmes, Blair & Koerner* for respondent.

(1) The sale was a sale "on trial" with a definite time limited for trial. By the failure of the city, within the time limited, to reject the smoke preventers, the sale became an absolute one. Benjamin on Sales, sec. 595; Story on Sales, sec. 250; Quinn v. Stout, 31 Mo. 160. (2) By the acceptance of the smoke preventers by the city, through its failure to make a timely rejection of them, the conditions in the contract were discharged, being conclusively presumed to be satisfied.

Reed v. Randall, 29 N. Y. 358; Gaylord Co. v. Allen, 53 N. Y. 515; Gurney v. Railroad, 58 N. Y. 358; Norton v. Dreyfus, 106 N. Y. 90; Coplay Iron Co. v. Pope, 108 N. Y. 232; Brown v. Foster, 108 N. Y. 387; Studer v. Bienstein, 115 N. Y. 325; Zabriskie v. Railroad, 131 N. Y. 72; Haase v. Nonnemacher, 21 Minn. 486; Maxwell v. Lee, 34 Minn. 511; Thompson v. Libbey, 35 Minn. 443; Comstock v. Sanger, 51 Mich. 497.

LAMM, J.—Plaintiff sues for the contract price of eight smoke consumers, two thousand dollars, and to recover its deposit of three hundred dollars made on its successful bid to supply the same, with interest on both items. Said deposit was required by defendant for a purpose hereinafter shown. The case was assigned for trial to Judge Sale, presiding in one of the divisions of the circuit court of St. Louis. Presently, a jury being waived, it was tried to the court. From a judgment in favor of plaintiff for the full amount defendant appeals.

Plaintiff corporation had long manufactured and sold on the market a device known to the trade as a smoke consumer—the purpose whereof is writ large in its name. We take it, the city of St. Louis is pestered with coal smoke. We take it, some of this smoke it makes itself in operating its water plant. Having the end in view of providing wholesome air and cleanliness, an ordinance was passed in April, 1902, authorizing the expenditure of thirty thousand dollars in alterations and attachments to the boiler plant at the Chain of Rocks, etc. Thereat, in November, 1902, the water commissioner made a requisition on the commissioner of supplies for "steam jets with suitable valves to control the steam supply for same and auxiliary apparatus, equal, for the purpose intended, to arrangement and apparatus furnished by the Missouri Smoke Preventer Company, to be applied to eight boilers as

designated by the water commissioner at," etc., from which it is inferable that the water commissioner had in his mind's eye, as a model, plaintiff's device. Thereupon the commissioner of supplies advertised for sealed proposals as per the water commissioner's requisition. Thereupon plaintiff submitted a written bid, and this bid was accepted November 28, 1902, and approved by the proper officer.

It stands conceded that plaintiff's bid referred to and was based upon certain existing specifications and requirements formulated by city officers and filed in the proper office, viz.:

### "SMOKE CONSUMER.

"Steam jets with suitable valves to control the steam supply for same and auxiliary apparatus, equal, for the purpose intended, to arrangement and apparatus furnished by the Missouri Smoke Preventer Company to be applied to eight boilers as designated by the Water Commissioner at High Service Station No. 2, Bissell's Point.

"Furnish all necessary material and labor and make all necessary alterations in boilers and settings, and install device complete ready for operation.

"Each boiler to be provided with not more than fifteen steam jets introduced through the hollow stay bolts in sides of furnace and if found necessary to use steam jets at the front of boilers these jets may be introduced through fire doors and also through not more than three hollow stay bolts through front water space of the boiler. Make proper arrangements for introducing the requisite amount of heated air to furnace. Steam at a pressure of not less than eight pounds per square inch to supply the jets will be furnished by an auxiliary steam boiler or through a special steam pipe from High Service Station No. 1.

205 Sup—15

"*Guarantee*: The contractor must guarantee the smoke preventing apparatus in the following points, viz.:

"Guarantee not to injure the crown sheet or fire box or any part of the boilers in the installation of the device nor during actual operation of same by impingement of the flame created by the agency of the steam jets or otherwise.

"Guarantee to prevent the issuing from the stack of dense black or thick gray smoke, and further, the device must operate entirely in compliance with all smoke ordinances of the city of St. Louis and laws of the State of Missouri, and also to the entire satisfaction of the water commissioner of the city of St. Louis.

"Guarantee to prevent the issuing of smoke as above specified when burning bituminous coal from Southern Illinois at any rate up to thirty pounds per square foot of grate surface per hour.

"Guarantee not to decrease the efficiency of the boilers more than three per cent, i. e., the pounds of water evaporated per pound of coal from and at two hundred and twelve degrees after making deductions for the amount of steam actually used by the jets, shall not be more than three per cent less with the device in operation than when the device is not in use, when burning Southern Illinois bituminous coal of practically the same heat value, and at approximately the same rate per square foot of grate surface per hour in both cases.

"Guarantee that the smoke prevention device shall not decrease the present maximum steam generating capacity of the boilers.

"If, after sixty days' test, the water commissioner is not entirely satisfied with the operation and durability of the device in every respect, same shall be removed and the boilers and settings left in as good

condition as they were before the device was installed, all without cost or expense to the city of St. Louis.

"During the sixty days' operation and all tests of the device, the boilers shall be fired by the regular firemen employed by the water works of the city of St. Louis.

"The time and manner of doing the work shall be under the control of the water commissioner and all material and workmanship shall be subject to his inspection.

"The water commissioner will make all necessary tests during the sixty days' run to determine efficiency of smoke prevention, efficiency of boilers, consumption of steam for the jets, etc., and his conclusions and deductions in the premises shall be final.

"Full payment will be made after sixty days' test if all the conditions herein have been complied with, and provided the apparatus and the operation of same is satisfactory to the water commissioner in every respect.

"A deposit of three hundred dollars is required to guarantee the satisfactory installation of the device and removal of same in case it is so ordered by the water commissioner.

"The device to be installed complete within sixty days after notification of award.

"Each bidder must submit satisfactory evidence that the device which he proposes to install has been in successful operation under similar conditions to those proposed, and must submit with his bid drawings showing the design of the device or apparatus which he proposes to furnish."

On the acceptance of plaintiff's bid, the commissioner of supplies placed the following order with plaintiff:

"Office of Commissioner of Supplies,
"Room No. 317, City Hall,
"St. Louis, Nov. 28, 02.
"Missouri Smoke Preventer Co.

"Sir:—Please furnish the following articles for above-mentioned at prices as set forth in your bid dated ............ Steam jets with suitable valves to control the steam supply for same and auxiliary apparatus, equal for the purpose intended, to arrangement and apparatus furnished by the Missouri Smoke Preventer Co., to be applied to eight boilers as designated by the water commissioner at High Service Station No. 2, Bissell's Point, as per specifications on file in office of water commissioner.

"For the net sum of ...................$2,000.
"Deposit of $300 made on above, 11—28—1902."

The phrase in the foregoing order, "as per specifications on file in office of water commissioner," refers to the requirements and specifications hereinbefore set forth.

The petition avers the advertisement for bids, the bid of plaintiff in writing to furnish and install eight of plaintiff's devices for two thousand dollars, the acceptance of that bid as required by the ordinances of the city, the order for the smoke consumers, and goes on as follows:

"Plaintiff further states that, in compliance with the terms of said contract and award, it deposited with the commissioner of supplies of defendant the sum of three hundred dollars, and, within the time limited by said conditions, to-wit, January 10, 1903, furnished and delivered to defendant at the High Service Station No. 2, Bissell's Point, eight smoke preventing or consuming appliances complying in all respects with the conditions and guarantees hereinbefore set forth, and with the specifications on file in the office of the water commissioner of defendant, and, within the time limit-

ed in said conditions installed six of said appliances, applying and attaching them to six of the boilers at said High Service Station designated by the water commissioner of defendant. That the same were for the full period of sixty days subject to such tests as the water commissioner wished to apply, and were by the said water commissioner fully tested for and during the period of sixty days as required by the conditions of said award, and were found and ascertained to be in conformity with all of the conditions of said award, and were found to comply with and fulfill all of the guaranties accompanying said award and were satisfactory to the water commissioner of defendant.

"Plaintiff further states that it now is and has been at all times since the said award was made to it, ready and willing to install the remaining two smoke preventing or consuming appliances called for by the terms of said award and furnished by it as aforesaid similar in all respects to the six it installed as aforesaid, but the water commissioner of defendant has failed and refused though often requested to designate any boilers to which they should be attached, or applied.

"Plaintiff further states that although it has fully performed said contract or award upon its part, and has done and performed all things necessary to be done and performed by it thereunder, save in so far as it has been prevented by the defendant as aforesaid, yet defendant has failed and refused, though often requested, to pay to plaintiff the said sum of two thousand dollars due to it under the terms of said contract or award or any part thereof, and has failed and refused to return to plaintiff the three hundred dollars deposited by it as aforesaid.

"Wherefore," etc.

The answer makes certain admissions and denials. Among other things, it denies that plaintiff complied

with the conditions, guaranties and specifications accompanying the award, denies performance on the part of plaintiff, and then goes on in affirmative averments to furnish a list of ten particulars in which plaintiff defaulted, viz:

"1st. That the fire doors connected with the said boilers were of poor workmanship, not properly fitted to the boilers and not suited to the service to be rendered thereby.

"2nd. That the plaintiff did not make proper arrangements for introducing the requisite amount of heated air to the furnaces.

"3rd. Said appliances furnished by the plaintiff did not prevent the issuing from the stack of dense black or thick gray smoke; did not operate entirely, nor at all, in compliance with the smoke ordinance of the city of St. Louis, and the laws of the State of Missouri, nor to the satisfaction of the water commissioner of the defendant.

"4th. That the said advertisement, bill and acceptance were made under the provisions of an ordinance of defendant city numbered 20655, and approved April 17, 1902, by which it was provided among other things as follows, to-wit:

" 'Section 1. The Board of Public Improvements is hereby authorized and directed to make all necessary alterations in and attachments to the boiler plants at the Chain of Rocks and High Service Station No. 2, so as to abate the smoke.'

"But that the said alterations and attachments to the said boilers at Station No. 2 were not made by the plaintiff so as to abate the smoke.

"5th. That the said appliances decreased the efficiency of the boilers more than three per cent, that is, the pounds of water evaporated per pound of coal, from and at two hundred and twelve degrees, after making deductions from the amount of steam actually

used by the jets were at all times more than three per cent less with the device in operation than when the device was not in use, when burning Southern Illinios bituminous coal of practically the same heat value, and at approximately the same rate per square foot of grate surface per hour in both cases.

"6th. That the said smoke prevention device did decrease the maximum steam generating capacity of the boilers.

"7th. That although the water commissioner was not satisfied with the operation and durability of said device, the plaintiff failed to remove the same and to leave the boilers and settings in as good condition as they were in before the device was installed, and without cost and expense to the city of St. Louis.

"8th. That the plaintiff agreed, as one of the conditions of his said contract, that the conclusions and deductions of the water commissioner of the defendant, 'to determine efficiency of smoke prevention, efficiency of boilers, consumption of steam for the jets,' etc., should be final; but that plaintiff failed and refused so to do.

"9th. That the plaintiff did not submit satisfactory evidence that the device which he proposed to install had been in successful operation under similar conditions to those proposed, and did not submit with his bid drawings showing the design of the device or apparatus which he proposed to furnish.

"10th. That plaintiff failed satisfactorily to install said devices, and to remove the same when it was so ordered by the water commissioner.

"Defendant further states that it has done and performed all the things required of it in the said specifications and conditions.

"Defendant states further that after the said smoke prevention device of the plaintiff had been fully tested by the water commissioner of defendant, as re-

quired by the said contract, the defendant notified the plaintiff that said device was unsatisfactory in operation, that its guaranties in respect thereto had not been fulfilled; that said device had been rejected; and requested plaintiff to remove the same from defendant's boilers and premises.

"Wherefore," etc.

By way of further answer, defendant pleads a counterclaim of two items, aggregating eleven hundred dollars, grounded on charges that plaintiff damaged defendant in and about the subject-matter of the contract in sundry ways pointed out. But it will be unnecessary to consider the counterclaim at large. One of its specifications alone concerns us, *viz*: the allegation that plaintiff failed to remove its device as it agreed to do without cost and expense to defendant. Defendant's evidence in support of the counterclaim was directed to this particular charge; and at the close of its case the following announcement was made and comes here as part of the abstract of the record: "The defendant's counsel then stated that he would offer no further evidence under the counterclaim, but would be content with the evidence already in as to the cost of the removal of plaintiff's device, which amounted to more than the deposit of three hundred dollars, which the plaintiff made for the purpose of protecting the city in this respect."

The reply was in effect a denial of new matter.

After the evidence was in, fully uncovering the facts, the learned trial judge took time to consider. Eventually he made findings of fact and announced his conclusions in writing. The defendant prayed and was refused certain instructions. Other instructions were allowed. But in a law case tried to the court sitting as a jury the force of instructions is spent on showing the theory of the trial court; and in this instance that

theory is exploited in Judge Sale's findings and conclusions, reading in part as follows:

"No more than six of the devices were ever in fact attached to the boilers of the defendant, but the plaintiff actually furnished the eight devices called for in the contract, and the reason why the remaining two devices were not attached to the boilers, as stated both by Mr. Obear, witness for plaintiff, and Mr. Flad, witness for the defendant, was that only six boilers were furnished by the city to which the smoke preventer devices could be attached. Mr. Flad in his testimony says he never gave permission to attach the devices to more than six boilers. The contract is set out in the petition and likewise in the answer.

"In my view of the case it is unnecessary to consider the question whether plaintiff complied with its guaranties, although I am free to say that if the decision of the case rested upon the solution of that question, I would have little hesitancy in holding that the guaranties were not fulfilled, at least to the satisfaction of the water commissioner. It is unnecessary to state wherein the plaintiff failed to comply with its guaranties. The contract provides that the device, that is, the smoke preventer devices, should be installed complete within sixty days after notification of the award, that is, the plaintiff after notification of the award to it had sixty days in which to completely install the devices. On the other hand, while the contract is not altogether clear, I am satisfied that its purpose and intent were to give the city a period of like duration, that is, sixty days, within which to make all tests necessary or deemed to be necessary by the city. The clauses in the contract which lead to the conclusion that all tests must be made within sixty days are the following:

"'If after sixty days' test the water commissioner is not entirely satisfied with the operation and dura-

bility of the device in every respect, same shall be removed and the boilers and settings left in as good condition as they were before the device was installed, all without cost or expense to the city of St. Louis.'

" 'During the sixty davs' operation in all tests of the device the boilers shall be fired by the regular firemen employed by the Water Works of the city of St. Louis, Missouri.'

" 'The water commissioner will make all necessary tests during the sixty days' run to determine the efficiency of smoke prevention, efficiency of boilers, consumption of steam for the jets, etc., and his conclusions and deductions in the premises shall be final.'

" 'Full payment will be made after sixty days' test, if all the conditions herein have been complied with, and provided the apparatus and the operation of the same is satisfactory to the water commissioner in every respect.'

"It is admitted that the smoke devices were installed on the six boilers, which were all that the plaintiff was permitted to install, on January 10, 1903; that on January 12, 1903, notice in writing was furnished to the city by letter addressed to the water commissioner to the effect that the devices had been installed and were ready for operation. On January 30, 1903, the city notified the plaintiff that on February 3, 1903, a test would be made. A test was made on that day, but no record kept of the results. It seems to have been what is termed a smoke test. On February 10, 1903, notice was given that a test would be made on the following day. This seems to have been a boiler test. Nothing was done by the city after the two tests above mentioned. The city neither accepted nor rejected the devices after the tests of February 3, and February 11, 1903. On March 13, 1903, notice was given that a third test would be made on the following Monday and Tuesday, that is to say, on March 16 and 17, 1903; and

on March 21, 1903, the defendant by letter notified the plaintiff that the tests made on the sixteenth and seventeenth of March proved unsatisfactory and that the devices were rejected. The above facts are not disputed. It is understood that the final tests and the only tests upon which the city of St. Louis took any action were made on March 16 and 17, 1903, and four days thereafter, to-wit, March 21, 1903, the city notified the plaintiff of its rejection.

"On February 11, 1903, one test of six hours' duration was made. On March 16, 1903, one test of eight hours' duration without the smoke preventer device was made, and on March 17, 1903, one test of eight hours' duration with the device in operation was made. On the two last tests of March 16 and 17, each test consuming eight hours in the making, the defendant based its rejection of the devices. It is evident, therefore, that these devices could be tested in one, or at most two days, so as to determine whether the devices fulfilled the guaranties made in the contract. The contract speaks of a sixty days' test and of sixty days' operation. The evident meaning of the contract and the evident intention of the parties was to give the city of St. Louis sixty days in which all necessary tests must be made. Within that period the water commissioner could determine the time and manner of doing the work, as the contract provides, 'That the time and manner of doing the work shall be under the control of the water commissioner and all material and workmanship shall be subject to his inspection.'

"At any time within the sixty days the city, by its officials, could have determined the efficiency of the device in eight hours, or could make a complete test with and without the device in sixteen hours, which was the time actually consumed by the last test. The sixty days within which the tests must be made certainly begin not later than January 12, 1903, the day on

which the notice in writing was furnished to the city that the devices had been installed. . . .

"It is not necessary to decide whether the defendant had a reasonable time after the lapse of sixty days from January 12, 1903, within which to notify the plaintiff of its acceptance or rejection of the device. Inasmuch as the contract entitled the plaintiff to full payment after sixty days' test, provided the apparatus and the operation of the same proved satisfactory to the water commissioner, the money due under the contract became due immediately upon the expiration of the time within which the test should be made. The defendant was no more entitled to extend the time within which the test must be made to seventy days, than it would have been entitled to extend the time to one hundred days or to any other fixed time except that indicated by the contract. If such is not the correct interpretation of this contract, the clause with reference to making full payment after sixty days' test is absolutely meaningless. When it is remembered that the actual test upon which the city based its action was made in sixteen hours, it seems impossible to escape the conclusion that sixty days from the installation of the devices was the limit within which the city agreed to make all necessary tests. The water commissioner having failed to make all necessary tests during that sixty days to determine the efficiency of smoke prevention, the efficiency of boilers, consumption of steam for the jets, as provided by the contract, the devices became the property of the city and must be paid for by it. . . . .

"Certain of defendant's instructions are given. I find nothing in the evidence which would justify me in concluding that defendant delayed making its tests at request of plaintiff. On all occasions defendant selected its own time without hindrance on part of plaintiff. If the commissioner had undertaken to base

conclusions on February 3 and 11 test, it would have been unreasonable to delay his conclusions until March 21, 1903. It was not and cannot be contended herein that the city's action was based on any tests except that of March 16 and 17, 1903.''

I have gone over the record, line upon line, and find there was substantial evidence upon which the trial court could well base its finding of facts. Those facts as found are therefore adopted for the purposes of this opinion.

As there is a contention made that the sixty days in which the city contracted to make the tests did not commence to run on January 12, 1903, it may be well to say that the record discloses the devices were installed before that day and plaintiff gave notice by word of mouth to that effect. Thereupon a written notice was requested by the water commissioner, and on January 12, 1903, such formal written notice was given. The only sensible purpose to be assigned to the request for a written notice and the giving of one is that assigned by the learned trial judge, to-wit, that such written notice marked the day on which the duty of plaintiff to install the devices ended and also the day on which defendant's duty to test the devices began. As bearing upon the intent of the parties to the contract, it may further be said that the installation of the devices involved apparently no inconsiderable labor and expense on plaintiff's part.

The record shows that the city at an undisclosed date removed the devices and cast them aside. The learned trial judge said he ''would have little hesitancy in holding that the guaranties were not fulfilled, at least to the satisfaction of the water commissioner.'' Attending to that language, and in justice to all concerned, it may be said that there is no charge or proof of fraud or caprice connected with the acts and decisions of the water commissioner. It will, furthermore,

tend to define the issue of law in this case to say that the testimony of defendant would have warranted the trial judge in going further and in finding that the guaranties were not fulfilled. Defendant's proof tended to show that the devices, as indicated by the tests, somewhat abated but did not prevent "dense black" or "thick gray" smoke escaping from the smoke stacks; that the fire doors put on by plaintiff were not properly fitted; that the percentages of clinker and ash were increased by the use of the device; that the noise in its use was aggravating; that it took more firemen to use it; that the efficiency of the boilers was decreased more than three per cent; that the steam pressure fluctuated unusually, and so on.

The case, then, may proceed on the theory that, assuming the facts, not only as found by the trial judge but as indicated above, to be true, the question to be adjudged may be sharply defined to be this: Is the law applicable to those facts correctly stated in the conclusions of the trial court?

I.   The law of sales is full of complexity and subtlety in many of its phases. To meet the ends of justice between man and man, that law adjusts itself to cover the shifting details born of ingenuity in affairs of traffic and dicker. Therefore, at the outset in considering the case at bar, to prevent misunderstanding and to fetch a compass, it may be well to get at the matter in judgment by a process of elimination, i. e., by pointing out some matters not in judgment. For instance, this is not a case where the title to chattels admittedly passed from plaintiff to defendant and where defendant, when sued for the purchase price, claims damages because of broken warranties, express or implied, running with the chattel, i. e., kept alive and operative after sale and delivery. The law of such cases, therefore, is not applicable here. Nor is this a case where a buyer complains that he was induced to pur-

chase and take title on the strength of misrepresentations of quality and fitness relied on by him and made by the seller. It will be observed defendant in this case does not undertake to recoup, by way of defense to the purchase price, any damages in the difference between what the chattel would have been worth if marketable or as represented and what it was actually worth at the place of delivery. There is no fraud in the case at bar. Nor is the case a sale by sample where the thing delivered does not come up to the sample. Nor is it a case where it is contended that the thing sold had no value.

The case in judgment is one in which it is conceded on all hands that the title to the smoke preventing devices did not pass out-and-out to defendant at the start. At best it passed only *sub modo,* if at all. Such case is spoken of in the books as "a sale on trial." It has elements in common with sales known as "sale or return," and "sale if satisfactory." The city reserved an option to let the out-and-out title pass and the ultimate and controlling question is: Did such title ever pass?

II. The specifications prepared by the city and referred to in the proposal must be interpreted somewhat *contra proferentem.* They were so formulated as to give the city an important option, to-wit, the right to test the device for sixty days to determine its efficiency. With that right went a duty. During those sixty days plaintiff was exposed to the hazard of losing his expenses and outlays in installing the device, and of the impairment of the device by use in experiments. The contract does not expressly make time of its essence. But in view of the manifest intent of the parties, of the subject-matter and of the option of defendant, time became of the essence of the contract by fair implication; and the trial court, therefore, did not err in holding that the city had no more than

sixty days to make tests. In Hollmann v. Conlon, 143 Mo. l. c. 378, SHERWOOD, J., had under exposition a contract of the class "where the vendor is bound by a cable, and the vendee by not so much as a silken thread," and held that time was of the essence of that class of contracts. The Hollmann case is not this case, but the principle enunciated there may be borrowed for use here. The city having sinned away its day of grace should not be allowed to reject the device as the result of experiments made after the sixty days had expired—no reasonable excuse for the delay appearing. The trial judge so held, and we concur in that ruling.

III. It was held below, in effect, that the duty rested upon defendant, under the contract and the circumstances of this case, to give reasonable notice of the rejection of the device and for plaintiff to remove the same. It was furthermore held in the last paragraph of the finding, that, conceding *arguendo* that the action of the city was based on trial tests during the trial limit of sixty days, yet that the notice given on March 21, 1903 (eight or nine days after the expiration of the trial limit), was not reasonable notice.

We have no difficulty with the last proposition. One trouble with the notice of March 21 was that it was based on experiments made after the sixty days' trial limit had expired. The trial court found that plaintiff did not ask for an extension of time to make further experiments, that no extension was arranged for, but that defendant set the time of its experiments to suit itself. There was some little conflict in the testimony in the last particular, but on appeal we have nothing to do with that. What is reasonable notice in some cases might be a question of law; but ordinarily it is a question of mixed law and fact, and in this case it was an issue of fact to be submitted to the court sitting as a jury. The point was close, but the court found against defendant on that issue and set forth the

grounds upon which it based its finding. We find no fault with them.

It is a settled rule of law that, under the conditions shown by this proof, plaintiff was entitled to a reasonable notice of disapproval. [Esterly v. Campbell, 44 Mo. App. l. c. 625; Mechem on Sales, sec. 661; Turner v. Machine & Foundry Co., 97 Mich. l. c. 174; Columbia Rolling Mill Co. v. Beckett Foundry & Machine Co., 55 N. J. L. 391; Waters Heater Co. v. Mansfield, 48 Vt. 378; Spickler v. Marsh, 36 Md. 222; Butler v. School District, 149 Pa. St. 351; Kahn v. Klabunde, 50 Wis. 235; Dewey v. Erie Borough, 14 Pa. St. 211; Springfield Engine Stop Co. v. Sharp (Mass.), 68 N. E. 224; Thompson-Houston Electric Co. v. Brush-Swan Electric Light & Power Co., 31 Fed. 535; Gibson v. Vail, 53 Vt. 476.]

IV. The case, then, has progressed to the point where it must be taken as already determined that defendant, under the proof, had sixty days only in which to make tests, that plaintiff was entitled to reasonable notice of the result of those tests, or at least of the rejection of the device; that such notice was not given, and that the notice given was based on tests made after the trial limit. This brings us to the main proposition in the case, viz: It was held below that in this condition of things the title finally vested in defendant out-and-out, that it became the owner of the smoke preventers, and, under the proof and in the condition of the pleadings, must pay for the same. Of course, if defendant was bound to pay for the smoke preventers, then a counterclaim, based on the theory that plaintiff was obliged to remove them and that defendant was damaged to the amount of plaintiff's deposit by plaintiff's failure to remove, can have no standing in the case.

Did the court, *nisi*, rule rightly in the foregoing holding? We think so, because:

Obviously, if defendant saw fit it could make a contract in which it exacted certain requirements of fitness and quality in a device it desired to own. Obviously, too, if the other party to the contract agreed, the defendant could make a contract in which it was to be the sole judge of fitness and quality and in which it reserved the right to pay on being satisfied after making tests. That is precisely the contract made here. Defendant's learned counsel argue that the city was not satisfied and never accepted the device. Therefore, they say, the obligation to pay does not exist. Plaintiff's learned counsel do not argue that the city by express words accepted the device or announced satisfaction through its water commissioner. They argue that the city's satisfaction and acceptance arose by implication from its failure to reject the device and give notice in reasonable time.

Mr. Benjamin lays down the rule to be (Benj. on Sales [7 Am. Ed.], sec. 595) as follows: "Other instances of sales dependent on conditions precedent are afforded by 'sales on trial,' or 'approval,' and by the bargain known as 'sale or return.' In the former class of cases there is no sale till the approval is given, either expressly or by implication resulting from keeping the goods beyond the time allowed for trial. In the latter case the sale becomes absolute, and the property passes only after a reasonable time has elapsed without the return of the goods. In sales 'on trial,' the mere failure to return the goods within the time specified for trial makes the sale absolute, but the buyer is entitled to the full time agreed on for trial, as he is at liberty to change his mind during the whole term, and this right is not affected by his telling the vendor in the interval that the price does not suit him, if he still retains possession of the thing."

It was rightly pointed out in Esterly v. Campbell, 44 Mo. App. l. c. 623, *et seq.*, by ELLISON, J., that Mr. Benjamin states the rule too broadly in his text, in that the mere failure to return will not perfect the sale except it be a part of the agreement that return shall be made. The learned judge comments as follows (p. 624): "If it had stated the failure to return, offer to return or to give notice of dissatisfaction, it would have been more consistent with the law as declared by adjudications." The treatise of Mr. Benjamin has received the distinguished and uncommon honor of being made the basis of An Act of the English Parliament in 1893 known as the Sale of Goods Act, wherein it was attempted to codify the law of sales. It so nearly follows the lines of his treatise, that the last English edition (5 Ed. 1906) is built on and around the Sale of Goods Act. Sec. 18, Rule 4, of that Act (Benj. on Sales [5 Eng. Ed.], p. 328) is as follows:

"Rule 4. When goods are delivered to the buyer on approval or 'on sale or return' or other similar terms the property therein passes to the buyer:

"(*a*.) When he signifies his approval or acceptance to the seller or does any other act adopting the transaction:

"(*b*) If he does not signify his approval or acceptance to the seller, but retains the goods without giving notice of rejection, then, if a time has been fixed for the return of the goods, on the expiration of such time, and, if no time has been fixed, on the expiration of a reasonable time. What is a reasonable time is a question of fact."

It would seem the English statute is practically declarative of the common law. [See authorities cited under paragraph 3 of this opinion.]

The failure to notify the plaintiff of its dissatisfaction and to remove the smoke preventers within a reasonable time, raised the implication of acceptance.

That acceptance passed the title to the city and created the obligation to pay in the condition of the proof and in the present state of the pleadings.

This being so, the judgment below was right and should be affirmed. It is so ordered.

All concur.