CHATHAM SECURITY CORPORATION, Appellant, *v.* J. R. WILLISTON & BEANE, Respondent.

First Department, December 15, 1964.

*Joseph Miller* of counsel (*Uttal, Miller & Dubin*, attorneys), for appellant.

*Burton M. Abrams* of counsel (*Abrams & Geller*, attorneys), for respondent.

BREITEL, J. P. Plaintiff, a financing factor, appeals from a judgment in favor of defendant, a stockbroker, after a non-jury trial. Plaintiff sues on a check made payable to a bank, Meadow Brook National Bank, on which the broker, drawer of the check, had stopped payment. The check was given in payment of the adjusted proceeds from the sale of stock for the account of its customer, Arlee Associates, Inc. The issue is whether the broker, concededly having a right of setoff against its defaulting customer, could assert that setoff against plaintiff which, unknown to the broker and unmentioned in the transactions in suit, had a security lien in the shares of stock for which the broker had given its check.

The judgment should be affirmed on the ground that defendant was entitled to stop payment on its check, having learned that its customer, Arlee Associates, Inc., in another transaction, had obtained bonds from it by making fraudulent payment with bad checks drawn on nonexistent bank accounts. The right of setoff does not depend upon principles of estoppel or detrimental reliance but vests as between contracting parties in the absence of notice of any interest in third parties in the subject matter of the transaction.

The factor, Chatham, had secret arrangements with Arlee for the financing of stock purchases and sales made ostensibly by Arlee on open cash account through stockbrokers. The financing would be for short terms, a matter of days in which

Stock Exchange rules require the clearing of purchases and sales. The liquidation of these short-term purchases or sales would be effected by Arlee making offsetting sales or purchases, similarly financed by factors: Chatham or another. The profit for Arlee was derived from the small fluctuations in the market price, and the compensation to the factor was a charge on a basis of a fixed fractional percentage of the gross price of the stock.

Chatham, in turn, financed the operations by placing the securities purchased with the Meadow Brook bank against advances by the bank, subject to its instructions as to delivery against cash or negotiable instruments. It disclosed nothing to the bank, so far as is revealed by the record, of its relations with Arlee or the purpose of the financing. The account transactions in evidence reveal the name of Arlee but not the nature of the relationship. The bank, of course, bore no meaningful risk so long as its account with Chatham was covered by deposited securities or it could look to Chatham for any failure with negotiable paper taken in exchange for deposited securities.

Arlee, in its dealings with defendant broker, acted simply like any other customer on cash account. It disclosed nothing to the broker of its secret financing arrangements with Chatham, nor, so far as this record is concerned, did it advise the broker of the kind of short-term " clearance " transaction which was its practice. Offsetting transactions were handled through other brokers.

In the documents covering the relations between Chatham and Arlee it was provided that Chatham would " receive and deliver certain stocks for clearance on behalf of [Arlee] through such brokerage house as [Arlee] may from time to time indicate." Chatham's charge was provided to be one half (or three eighths) of 1% of the gross amount on the " buy " side of the clearance transaction. An additional fact of significance is Chatham's written arrangement with its bank, Meadow Brook, that its name not be used with reference to advices or instructions on its accounts with the bank but that they be designated by code symbols.

The preceding facts provide the framework for the transaction out of which this action arose and detail the pains taken to conceal that Chatham was a factor for Arlee, that it acted as an agent for Arlee, that it had a security lien in securities handled and to that extent was a principal, that Arlee was financing purchases of stock with a factor which had a security lien in the stocks purchased, that the Meadow Brook bank was an agent for Chatham, or only a subagent for

Arlee, and that bank or factor credit was being used to finance stock market transactions to the full amount of sales and purchases (i.e., without margin).

On May 19, 1961 Arlee instructed defendant broker to sell securities (stocks). The aggregate sale price was $54,121.74. On May 26, 1961 the Meadow Brook bank, pursuant to instructions from Chatham, tendered the securities to the broker with a request for payment on account of Arlee by check payable to the Meadow Brook bank. Defendant broker issued its check drawn on its own bank payable to Meadow Brook, receiving the securities it had already sold for Arlee. The check was in the amount of $53,198.75, the net adjusted proceeds of the stock sale. On May 27 and May 28 defendant broker learned that Arlee had given it, also on May 26, 1961, four checks on non-existent bank accounts in exchange for $200,000 worth of bonds. The broker stopped payment on its check.

Meadow Brook charged back the broker's check on which payment had been stopped and assigned it, without recourse, to Chatham, on whose behalf it had acted. Chatham then sued defendant broker claiming that the check had been delivered for a valuable consideration and that as a holder of a security lien in the securities given for the check it was not subject to any setoff defendant broker might have against Arlee.

The entire court is in agreement that Chatham acted as agent for Arlee, albeit with an undisclosed security interest in the subject matter of the transaction. The entire court is also in agreement that Meadow Brook's role was that of agent for Chatham and only as subagent for Arlee. There is also complete agreement that between Arlee and defendant broker there would be a right of setoff. There was, incidentally, a security lien in the securities in favor of Meadow Brook, also undisclosed to defendant broker. That lien plays no significant role in the case because Meadow Brook was made whole by Chatham, and, in any event, the undisclosed liens of Chatham and Meadow Brook stand or fall on the same footing.

The issue, then, resolves itself into the simple question whether one who deals with a purported agent for a disclosed principal may lose a right of setoff against the disclosed principal because of an intervening undisclosed security lien or interest in the purported agent with respect to which the agent is therefore *pro tanto* also an undisclosed principal.

Almost the precise question, involving identical principles of law and policy, was determined in the leading case of *Foreign Trade Banking Corp.* v. *Gerseta Corp.* (237 N. Y. 265). In the *Gerseta* case, plaintiff bank had financed an import of silk

by taking a trust receipt from the importer who undertook to sell the goods for the bank as principal and remit the proceeds to it. As here, the trust receipt arrangement was an uncommunicated private one between the bank and the importer. The importer made direct delivery of the goods to its purchaser, defendant Gerseta. The same day the bank enclosed in a letter to the purchaser trade drafts and invoices. The purchaser rejected the trade drafts and kept the goods, claiming an offset against the importer on the basis of antecedent indebtedness in excess of the price of the goods. The court held that the purchaser was not liable to the bank for the purchase price and that its right to an offset was unqualified.

In so holding, the court, citing *Hogan* v. *Shorb* (24 Wend. 458, 464), said that it made no difference that the sale was a cash sale. It was too late, after the sale, for the bank to give notice that it was the " owner " of the goods. Said the court (p. 274) : " After the equities existing between the parties had been fixed, it was too late for the undisclosed principal to assert its adverse rights. It is not a case where it makes no difference to the purchaser to whom he pays the price of the goods. If the bank's position is upheld, defendant will owe $18,000 more than it had a right to expect it owed when it took the goods." This is generally the applicable rule (see Undisclosed Principal — Defenses, Ann. 53 A. L. R. 414, 417–430). In short, no element of detrimental reliance was required to support the right of setoff.

So much for the right of setoff as one which vests, without detrimental reliance, at the time of contracting and delivery of the securities. The only remaining difference is that here the broker gave its ordinary check payable to the Meadow Brook bank, but it did so in the belief that the bank was taking the check as agent for Arlee, without notice that the bank or any other had any securitiy lien or interest in the securities or the proceeds of the check. This, of course, resulted from the deliberate general design of all the other participants in the transaction, although there was no specific intention, perhaps, to deceive the broker.

While it is undoubtedly true that Chatham and Arlee were not thinking in terms of any right of setoff in the broker, and while it is probably equally true that the broker was not thinking in terms of right of setoff prior to the delivery of its check to the Meadow Brook bank, this makes no legal or commercial difference. So long as detrimental reliance is not an essential factor in fixing the right of setoff as between con-

tracting parties, the right of setoff simply either exists or does not. The right is only defeated if there is a disclosed prior interest in a third party, even an agent, which puts one of the contracting parties on notice that he does not or will not have a right of setoff. In this context, it is well-established law that an agent who acquires an interest in his principal's contract takes subject to defenses available against this principal even as any assignee (Restatement, Agency, 2d, §§ 372, 375).

If Chatham is treated as an assignee of Arlee, its position is worsened. Chatham contends that by financing Arlee it received from Arlee a security interest in the securities, and that as the holder of such an interest it was entitled in its own right, rather than merely as agent, to receive payment on delivery of the securities to the broker. The fallacy of this contention is that by the time the broker received notice of Chatham's, or Meadow Brook's, interest it had already extended over $200,000 credit to Arlee for the purchase of the bonds. Indeed, that fraudulently obtained credit was extended on the same day, and may have been arranged even earlier. On May 26, 1961 the broker delivered the negotiable bonds, taking in return the checks which later proved worthless. The court need not decide, and the record does not establish, whether the bonds were delivered to Arlee before or after receipt of the securities from, and delivery of the check to, Meadow Brook on May 26, although both events occurred on the same day. The important fact is that it was not until after delivery of bonds on May 26 that it was revealed to the broker that Chatham was involved and had obtained an interest in its principal's securities.

Even if Chatham and Meadow Brook were not Arlee's agents, their claim against the broker as assignees of Arlee's right to payment would be subject to the broker's setoff. An assignee is subject to setoffs available against the assignor whenever the setoffs are based on facts existing prior to knowledge by the obligor of the assignment, and indisputably after the facts have given rise to a claim or demand (Restatement, Contracts, § 167, subd. [1]; Personal Property Law, § 41, subd. 3; but, see, *Fera* v. *Wickham*, 135 N. Y. 223; *Michigan Sav. Bank* v. *Millar*, 110 App. Div. 670, affd. 186 N. Y. 606; CPLR 3019, subd. [c]).

There is no injustice in the result. Chatham, by design, was an undisclosed owner of an interest in the securities, and to that extent a principal. Every precaution was taken to con-

ceal its interest. It can hardly complain if the complete success of its efforts at concealment results in the loss of the value of the lien. Defendant broker, on the other hand, was always in the belief that it was dealing with Arlee alone as a principal untrammeled by encumbering liens. That in a short period of time its right of setoff would have been exhausted is of no importance. This was the ordinary risk of trade, known to it; but to this risk should not be added that of bearing another risk against deliberately concealed interests thus depriving it entirely of its temporary right of setoff. There is commercial significance in requiring that secret owners of interests in assets give notice if they wish to bar others who, to the knowledge of such owners, are transacting with reference to the assets. If they still do not wish to give notice then their protection must be sought elsewhere or in other ways, such as to require a certified check or bank draft in lieu of an ordinary check. In this way, there would be ample notice that the exchange was irreversible, and that perhaps the interests of third parties were involved. The fact is that in commercial expectations an ordinary check is recognized as one on which payment can and will be stopped for fraud, trick, or deceit, and sometimes for offset.

Thus far it is assumed that the broker suffered no detriment whatever. Actually, there is a detriment if one stops payment on a check, in ignorance of intervening rights, and it is held that such unknown rights defeat the right of setoff. The drawer of the check in that circumstance becomes liable to judgment and interest on the judgment, and, in a proper case, for consequential damages for stopping payment, all without notice and knowledge of any intervening rights. This is unfair and since it is the intentional act of plaintiff which causes the unfair consequences, the failure to give notice is a waiver of any right of lien or right to resist the setoff.

There are some other significant aspects of the case, not resulting in disagreement among the members of this court, upon which the parties are in dispute. These are adequately treated in the opinion by Mr. Justice MARTINIS at Trial Term, and it is unnecessary to retrace the ground covered there.

Accordingly, the judgment in favor of defendant on the merits should be affirmed, with costs to defendant-respondent against plaintiff-appellant.

RABIN, J. (dissenting). I dissent and vote to reverse the judgment appealed from and to grant judgment to the plaintiff as prayed for.

The plaintiff, a finance company, seeks in this action to recover the sum of $53,198.75 as holder of a check in that amount made by the defendant and upon which payment was refused. This relief was denied by the trial court on the ground that defendant was entitled to a setoff — a setoff asserted against plaintiff's principal in this transaction, Arlee Associates, Inc.— in a sum in excess of the amount sought to be recovered.

The facts giving rise to this action are substantially as follows: Arlee Associates, Inc., was engaged in the business of purchasing and selling securities, in what are commonly known as clearance transactions. It entered into an agreement with the plaintiff whereby the latter would furnish the funds for stock to be purchased by Arlee, and upon the sale shortly thereafter the plaintiff would recoup the funds advanced, plus a fee for its "services", with the balance remaining, if any, to be paid over to Arlee. Plaintiff, on its part, had an agreement with the Meadow Brook bank whereby the latter would receive the securities purchased, pay for them (charging plaintiff's account), deliver the securities to the subsequent buyer and eventually remit the proceeds (less the advance fee) to the plaintiff.

The clearance transaction which gave rise to this lawsuit involved the buying and selling by Arlee of some 900 shares of stock. On May 19, 1961 Meadow Brook received the securities and issued a check in payment therefor in the amount of $53,000, charging plaintiff's account in such sum. The securities were held by Meadow Brook until May 26, 1961. In order to effect their sale, defendant received instructions from Arlee to accept delivery of the stock and to pay Meadow Brook the sum of $53,198.75. The instructions were complied with and the defendant made a check in that sum payable to the bank. Thereafter, and on May 29, 1961, defendant, having learned that some $200,000 of checks made by Arlee in connection with another transaction, were uncollectable, stopped payment on the check given to Meadow Brook. Meadow Brook assigned the check to the plaintiff and the instant lawsuit ensued.

The issue presented is whether the defendant's claim against Arlee may be sustained as a setoff against the plaintiff in its action on the check. I conclude that it may not.

Looking solely to the undisputed facts as to the relationship of the parties, it is clear that Arlee was the principal and that the plaintiff was its agent. Meadow Brook in turn was the agent of the plaintiff and consequently must be considered to be the agent of Arlee. For all practical purposes Meadow

Brook and the plaintiff are one entity in this transaction and I treat them as such.

If Meadow Brook, as agent of Arlee, had been merely a conduit for the delivery of the stock and the collection and transmittal to Arlee of the funds paid in return therefor, then the setoff asserted by the defendant against Arlee would clearly be a good one. It would be so irrespective of whether the claim to the setoff arose out of a different transaction and subsequent to the transaction here involved.

However, in this case, Meadow Brook and the plaintiff were not "naked" agents for the purpose of delivery and collection. Here the agent had such an interest in the proceeds as ordinarily would entitle it to withhold an amount to the extent of that interest.

There is no doubt but that if the defendant delivered its check in return for the stock, knowing of the plaintiff's interest, there could be no setoff. However, the defendant asserts that it had no such knowledge. While it is difficult to believe that the defendant, with its expertise in this business, did not fully understand the nature of the transaction, yet, inasmuch as there is nothing in this record to indicate that knowledge was brought home to it, I must assume that defendant had no actual or constructive notice of plaintiff's interest.

Thus, the ultimate question to be decided on this appeal is whether, in the circumstances of this case, such lack of knowledge gives the defendant a right of setoff where it would have had none had it known of plaintiff's interest.

As I view it, the mere failure to disclose the plaintiff's interest does not, nor should it, give defendant a right of setoff which it would not have had had there been such a disclosure. This conclusion is dictated by the answers to the following questions: Was the defendant prejudiced in any way by the failure to receive notice of the plaintiff's interest? Did the defendant rely on the plaintiff being a mere "naked" agent of Arlee? Would not the defendant have consummated the transaction even if it had known of the plaintiff's interest, and of the plaintiff's right to protect that interest? Did not the defendant receive consideration in full for the check which it delivered to the plaintiff? These questions lend themselves to ready answers. Foremost, there was no reliance placed by the defendant on an assumption that the plaintiff was an agent merely for collection. Indeed, the testimony of plaintiff's operations manager clearly indicates that defendant would have closed the transaction even had it known that the plaintiff was

entitled to deduct its interest from the proceeds. That testimony was as follows:

" Q. Are you interested in whether the bank has any lien on those securities? A. No, sir.

Q. Do you know whether the bank has any lien on the securities? A. I don't know.

Q. Did you ask whether the bank has any liens on the securities? A. No, I didn't ask.

Q. You are not interested in anything but receiving securities and making payment? A. Identical securities sold, I am interested in receiving.

\* \* \*

Q. You are not interested in whether the bank has a lien? A. I answered that question.

Q. You are not interested? A. I answered you before and said, no.

Q. Are you interested in whether the bank is acting for anyone other than Arlee? A. No.

Q. Are you interested in whether the bank is acting for Chatham Security Corporation? A. For anyone.

Q. Not at all? A. The answer is, no.

Q. It makes no difference to you? A. No."

Under such circumstances how can we say that the failure to notify the defendant of the plaintiff's interest in any way affected it? The defendant suffered no loss in consequence of the failure to make a disclosure of the plaintiff's interest. The delivery of the stock was full consideration for the check delivered and no claim has arisen as the result of the specific transaction. In consequence, there was no prejudice to the defendant.

It would be quite different if the defendant placed reliance on the assumption that the plaintiff was an agent merely for collection. Then, perhaps, the defendant could claim prejudice. Not having placed reliance on such assumption its position was not changed in the slightest because of its failure to have notice of the plaintiff's interest. Why then should the defendant have any greater rights than it would have had had it known of the interest, when it plainly states that it would have closed the transaction in the same manner had it had full knowledge of such interest? Indeed, to allow a setoff by the defendant, in these circumstances, would make for a most inequitable result. The plaintiff would not have parted with the stock—thereby surrendering its security—except in exchange for what appeared to be a good check. The defendant attempts

to make a windfall for its benefit merely because it allegedly had no knowledge of plaintiff's interest. We should not impair the plaintiff's right to protect its interest.

The majority concludes that detrimental reliance is not a prerequisite to the enjoyment of a right of setoff. I agree with that statement but only as a general one not here applicable. There is no question but that a right of setoff would be available to defendant as against Arlee—even absent detrimental reliance—had there been no intervening interest in the plaintiff. The majority find such interest to be of no consequence. However, as I read *Foreign Trade Banking Corp.* v. *Gerseta Corp.* (237 N. Y. 265) and *Hogan* v. *Shorb* (24 Wend. 458) — relied upon by the majority — they do not support the majority position. The opinion in each of those cases reveals that the state of mind of the purchaser (i.e., the question of detrimental reliance) was of primary concern in determining whether a setoff was available. While those cases resulted in holdings for the purchasers, the facts differ from those of the instant case in a most important respect. In the *Hogan* case " the purchaser, when he obtained the goods, did not intend to abide by his contract but proposed to setoff a demand against the agent " (p. 273). Similarly, in the *Gerseta* case the court indicated that the purchaser may well have dealt with the importer " in order to obtain a credit on the accounts between them " (p. 274). In stating it was " not a case where it makes no difference to the purchaser to whom he pays the price of the goods " (p. 274), the court implied that were there such indifference the result would have been otherwise. In the instant case such indifference is manifest in the record and, I submit, warrants a result contrary to that reached by the majority.

McNally, Steuer and Bastow, JJ., concur with Breitel, J. P.; Rabin, J., dissents in opinion.

Judgment in favor of defendant on the merits affirmed, with $50 costs to defendant-respondent against plaintiff-appellant.