Foreign Trade Banking Corporation, Respondent, v.
Gerseta Corporation, Appellant.

**Principal and agent — undisclosed principal — trust receipts
— right of setoff — evidence — notice — questions of fact.**

1. An undisclosed principal cannot assert his rights against a third party without leaving to the third party the same rights that it would possess if the agent had in fact been the principal.. If the agent sells goods in his own name, having possession of the goods, and the purchaser, acting innocently and without notice, deals with the agent as principal, the right of setoff which might be asserted against the agent may be asserted against the undisclosed principal. The state of accounts between the agent and the third party at the time the principal seeks to assert his rights against the third party becomes a matter of defense.

2. When goods are sold by an agent for an undisclosed principal, to an innocent purchaser, the purchaser may, in an action by the owner of the goods, set off a demand against the agent which it held at the time of the sale, although it matured thereafter and before the suit is commenced. (*Hogan* v. *Shorb*, 24 Wend. 458, 464, followed.)

3. In an action by the undisclosed principal for the purchase price of goods sold, the purchaser is entitled to show a prior agreement with the agent in regard to the acceptance of the goods and the setting off of claims owed by the agent to the purchaser.

4. The principal may come in at any time after the sale and arrest all further dealing between his agent and the purchaser; and if after notice from the principal, the purchaser pays the agent or acquires a demand against him, he cannot set that up as a defense in an action by the owner of the goods, but the character of notice must be such as fairly to create an inference as to the existence of the agency. An equivocal demand which might arouse suspicion merely, is not as matter of law sufficient notice.

5. Where a question of fact arises as to whether purchaser from an agent for an undisclosed principal had notice of seller's rights and the limitations on the agent's authority, it is error to direct a verdict for the plaintiff principal.

6. A was under contract with B for the purchase of imported silk for future delivery. B, to finance the importation of the silk, applied to bank for a letter of credit which was issued, title of silk to be in bank. Silk was shipped under bills of lading made out in the name of the bank. Bank released same to B under trust receipts for

delivery to A. Delivery was made by B to A in its own name. The next day bank demanded that A sign trade acceptances. A refused, claiming that B was indebted to it on other accounts for an amount in excess of the amount due. Bank sued A. *Held*, error to direct a verdict for the bank and to refuse to permit A to go to the jury on questions of notice and setoff.

*Foreign Trade Banking Corp.* v. *Gerseta Corp.*, 204 App. Div. 875, reversed.

(Argued November 26, 1923; decided December 27, 1923.)

· APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 8, 1923, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Herman Shulman* and *Mortimer Hays* for appellant. In selling and delivering the raw silk in question to the defendant pursuant to the authority given it under the trust receipt, the Raw Silk Trading Company acted as agent or factor for the plaintiff, its undisclosed principal. (*Moors* v. *Kidder*, 136 N. Y. 32; *New Haven Wire Co. Cases*, 57 Conn. 352; *F. & M. Nat. Bank* v. *Hazelton*, 78 N. Y. 104; *N. Y. S. Trust Co.* v. *Lipman*, 157 N. Y. 551; *Blydenstein* v. *N. Y. S. & T. Co.*, 67 Fed. Rep. 489; *M. & T. Bank* v. *F. & M. Nat. Bank*, 60 N. Y. 40; *Clark* v. *Flynn*, 120 Misc. Rep. 474; *Baker Co.* v. *Brown*, 214 Mass. 196; *Chemical Nat. Bank of New York* v. *New York Dock Co.*, 196 N. Y. Supp. 414; *Glass* v. *C. G. Corp.*, 81 Fla. 687; *F. & M. Nat. Bank* v. *Logan*, 74 N. Y. 568.) The defendant having dealt with the Raw Silk Trading Company, the factor or agent, as a principal is entitled to set up against the plaintiff, the undisclosed principal, in an action for the purchase price under the contract of sale, the claims and setoffs which it had against the Raw Silk Company at the time of the delivery of the raw silk in question and which matured prior to the commencement of this action. The trial court, therefore, erred in refusing to set off against the

plaintiff's claim the defendant's setoffs against the Raw Silk Trading Company proved at the trial, and in refusing to allow the defendant to prove that prior to notice of the plaintiff's rights it entered into an agreement with the Raw Silk Trading Company whereby the defendant's claims against the trading company pleaded in its answer were to be set off against the purchase price of the silk in question. (*McLachlin* v. *Brett*, 105 N. Y. 391; *Hogan* v. *Shorb*, 24 Wend. 458; *Nichols* v. *Martin*, 35 Hun, 168; *Kent* v. *De Koppet*, 149 App. Div. 589; *Burnham* v. *Eyre*, 123 App. Div. 779; *Pratt* v. *Collins*, 20 Hun, 126; *Tannenbaum* v. *Marcellus*, 3 Misc. Rep. 351; *Mitchell* v. *Bristol*, 10 Wend. 492; *Tainton* v. *Prendergast*, 3 Hill, 72; *Child* v. *Gilles Construction Co.*, 42 Utah, 120.) The uncontradicted testimony in so far as such testimony was permitted by the trial court shows that the defendant had no notice of the plaintiff's right at the time of the delivery of silk. The trial court, therefore, erred in refusing to hold as a matter of law that the defendant had no notice at the time of delivery or to submit the question of notice to the jury as a question of fact, in refusing to permit further testimony upon the question of notice and in directing a verdict for the plaintiff. (*K. C. Mills* v. *Cooney*, 129 App. Div. 250; *Joy* v. *Diefendorf*, 130 N. Y. 6; *C. N. Bank* v. *Diefendorf*, 123 N. Y. 191; *Engle* v. *Hyman*, 54 Misc. Rep. 251; *Gordon* v. *Ashley*, 191 N. Y. 186; *Hirsch* v. *Jones*, 191 N. Y. 195; *Ga Nun* v. *Palmer*, 216 N. Y. 611; *Shusterman* v. *Schwartz*, 64 App. Div. 634; *Fuller Buggy Co.* v. *Waldron*, 112 App. Div. 814; *Hull* v. *Littauer*, 162 N. Y. 572; *Schwinder* v. *Earl*, 183 App. Div. 667; *Schall* v. *Schwartz & Co., Inc.*, 181 App. Div. 327.)

*Frank M. Patterson* and *Franklin H. Mills* for respondent. The plaintiff had title to the silk as security for the payment of its advances. (*Farmers & Mechanics' Nat. Bank* v. *Logan*, 74 N. Y. 568; *Farmers & Mechanics'*

*Nat. Bank* v. *Atkinson,* 74 N. Y. 587; *Moors* v. *Kidder,* 106 N. Y. 32; *Charavay & Bodoin* v. *York Silk Mfg. Co.,* 170 Fed. Rep. 819; *Century Throwing Co.* v. *Muller,* 197 Fed. Rep. 252; *Matter of Dunlap Carpet Co.,* 206 Fed. Rep. 726; *Assets Realization Co.* v. *Sovereign Bank of Canada,* 210 Fed. Rep. 156; *Matter of Richheimer,* 221 Fed. Rep. 16; *Vaughan* v. *Mass. Hide Corporation,* 209 Fed. Rep. 667; *First Nat. Bank* v. *Kelly,* 57 N. Y. 36.) The defendant has no right to set off against the plaintiff's claim its unmatured claims against the silk company. (*Sullivan* v. *Shailor,* 70 Conn. 733; *Heidelbach* v. *Nat. Park Bank,* 87 Hun, 117.) The defendant had notice of the plaintiff's claim on July 30, 1920, at the latest, and the trial court did not exclude any testimony of the defendant on the question of such notice. (*Weaver* v. *Barden,* 49 N. Y. 286; *Seymour* v. *McKinstry,* 106 N. Y. 230; *Johnson* v. *N. Y. C. & H. R. R. R. Co.,* 173 N. Y. 179; *Lindkauf* v. *Lombard,* 137 N. Y. 417; *Fealey* v. *Bull,* 163 N. Y. 397; *MacDonald* v. *Met. St. Ry. Co.,* 167 N. Y. 169; *Fiddler* v. *N. Y. C. R. R. Co.,* 64 App. Div. 95.) The defendant is liable to the plaintiff, up to the amount of its advances, for the price of the silk as fixed by the contract between the defendant and the silk company. (*Lawrence* v. *Fox,* 20 N. Y. 268; *Burr* v. *Beers,* 24 N. Y. 178; *Little* v. *Banks,* 85 N. Y. 258; *Litchfield* v. *Flint,* 104 N. Y. 543; *Gifford* v. *Corrigan,* 117 N. Y. 257; *Societata* v. *Sulzer,* 138 N. Y. 468; *Clark* v. *Howard,* 150 N. Y. 232; *Seaver* v. *Ransom,* 224 N. Y. 233.)

Pound, J. The plaintiff is a banking corporation. The defendant is a manufacturer of silk. The complaint alleges that plaintiff sold and delivered raw silk to defendant of the value of $18,453.34 as follows: Plaintiff delivered the silk to the Raw Silk Trading Company under a trust receipt whereby that company agreed to deliver the silk to the purchasers thereof for the account of plaintiff and to deliver the proceeds to plaintiff; that

the trading company " as agent and on behalf of plaintiff " under said trust receipt, sold and delivered the silk to defendant " as the property of plaintiff; " that defendant agreed to pay therefor by cash or trade acceptances; that defendant knew when the silk was delivered that it was the property of plaintiff and delivered to defendant under the trust receipt; that it " thereafter " notified defendant that the silk was its property, delivered under the trust receipt, and demanded payment which was refused.

Defendant alleges in substance, as its defense, that it bought the silk from the Raw Silk Trading Company as a principal without knowledge or notice that it belonged to plaintiff or that the Raw Silk Trading Company was acting as agent on behalf of plaintiff under the trust receipts and that it is entitled to set off certain claims and demands against the Raw Silk Trading Company, although they were not due and payable at the time the silk was delivered.

For convenience the plaintiff will hereafter be referred to as the " bank," the defendant as the " purchaser " and the Raw Silk Trading Company as the " importer."

The facts developed on the trial are in substance as follows: On October 21, 1919, the purchaser entered into a contract with the importer for the purchase of 250 bales of raw silk at $8.65 per pound, to be delivered on arrival of the shipment from Canton during March, April, May, June and July, 1920. To finance the importation of the silk the Raw Silk Trading Company applied to the bank for a letter of credit which was in due course issued, and the raw silk was shipped from China to this country under bills of lading made out in the name of the bank. At the time of the issuance of the letter of credit the importer signed an agreement which provided that the title to and in the silk should remain in the bank until the amount of the letters advanced had been paid and that the raw silk should not be released to the

importer until the advances of the bank had been paid or a sufficient security lodged with it to secure their payment. The silk arrived consigned to the bank. It was released to the importer by it under so-called trust receipts, reciting that the merchandise was delivered to the importer in trust for the bank to enable the importer to deliver it to purchasers and to collect the proceeds of the sale thereunder and that the said proceeds of sale will be immediately delivered to the bank upon receipt of the same from customers. The title to the property was to remain in the bank, which should have the right at any time to cancel the trust and retake possession of the merchandise.

On July 29, 1920, the importer delivered 20 bales of raw silk to the purchaser and the purchaser receipted for the same as the property of the importer. On the same day the bank wrote a letter to the purchaser inclosing trade acceptances and with them sent invoices of the importer. These invoices recited that the merchandise was bought from the importer and contained the statement, " Trade acceptances to be presented by Foreign Trade Banking Corporation and returned to them." The purchaser refused to sign these acceptances and finally returned them to the bank. Its reason was that the importer was indebted to it on other accounts for an amount in excess of the amount due on this raw silk transaction. The purchaser endeavored to prove an agreement between it and the importer with regard to the acceptance of merchandise and the setting off of claims owed by it to the purchaser, but this evidence was not received. It did show, however, indebtedness from the importer to it in excess of the amount due on the same. It also offered evidence to the effect that it had no notice of the bank's rights in and to the raw silk in question at the time the same was delivered to it. The merchandise was delivered to it by the trucks of the importer, delivery receipts were presented, reciting

that it was received from the importer and the invoices showed that the merchandise was bought from it.

The court directed a verdict for the bank and refused to permit purchaser to go to the jury on the questions whether purchaser knew that title was in the bank, and whether or not it was entitled to set off its claims against the importer.

We are not dealing with a case where it is alleged that because the agent had no authority from its principal to pass title, title did not pass, nor a case where the principal has disaffirmed the contract and sought to regain the goods. (*Moors* v. *Kidder*, 106 N. Y. 32.)

The bank asserts that the silk was its property under the trust receipts and that the importer " as agent and on behalf of plaintiff under said trust receipts, sold and delivered " the same. Under the construction that the bank has placed on the trust receipts, by proceeding by this action to enforce the contract between the importer, as its agent and the purchaser, the bank takes the position that the importer sold and delivered the silk to the purchaser as its agent.

While it may be contended that, as between the importer and the bank, under the terms of the trust receipt, the importer had no authority to sell the silk in its own name, the bank now seeks to recover in affirmance of the sale made by its agent.

The rule is elementary that an undisclosed principal cannot assert his rights against a third party without leaving to the third party the same rights that it would possess if the agent had in fact been the principal. If the agent sells goods in his own name, having possession of the goods, the right of setoff which might be asserted against the agent may be asserted against the undisclosed principal. The state of accounts between the agent and the third party at the time the principal seeks to assert his rights against the third party becomes a matter of defense. If the purchaser, acting innocently and in good faith,

with no notice or knowledge, sufficient to put it on inquiry, of the agreement between the bank and the importer, dealt with the importer in reliance on its contract to purchase the silk from it and the possession of the goods, the rights of the purchaser are not to be affected by the subsequent disclosure of an unknown principal and the limitations on the authority of the agent. (*N. Y. Security & Trust Co.* v. *Lipman,* 157 N. Y. 551.)

Although the bank now contends that it did not sell the silk, because the silk had been already sold by the importer to the purchaser and that, by the terms of the trust receipt, the bank delivered documents of title to the importer solely to enable the importer to obtain possession of the merchandise and deliver it to the purchaser, its complaint is plainly in conflict with this theory of the case. The bank did not vest title in the importer, but it invested it with the indicia of title and the possession of the goods. It might have protected itself if it had not put it into the power of the importer to deceive innocent persons. Plaintiff must rest on the theory that the purchaser was not an innocent party, but that it knew that delivery was made under the trust receipt.

We may assume that the nature of the bank's title under the trust receipt was as security for the payment of its advances and that such security title will be enforced to the extent necessary for the protection of the bank, but it does not seem necessary under the facts pleaded and proved to determine what the nature of such title was in order to determine the rights of the parties in this case. The purchaser's contract was with the importer; the possession of the goods was in the importer and delivery was made by it. It had rightful possession of the goods and authority to deliver possession. As between it and the purchaser, it made the sale, not as alleged in the complaint, " as agent and on behalf of plaintiff under said trust receipt," but as a principal.

Nor does it appear without dispute that purchaser at the time of delivery " well knew that said silk was the property of plaintiff and delivered to defendant under said trust receipt." The purchaser may, therefore, assume the position of an innocent party dealing with the agent of an undisclosed principal.

What were the rights of setoff of such an innocent party? The contract of purchase and sale between the importer and the purchaser requires payment in cash or trade acceptances. The question arises whether the purchaser can set off a demand which it held at the time of the sale which was due at the time the suit was commenced. The rule is laid down in *Hogan* v. *Shorb* (24 Wend. 458, 464) which is on all fours with this case. The action was brought by the principal on a contract for the purchase price of the goods. The goods were sold by an agent, but the name of the principal was not disclosed. It was held that although the sale was a cash sale and the purchaser, when he obtained the goods, did not intend to abide by his contract but proposed to set off a demand against the agent, he could set off a note of the agent given prior to the delivery of the goods in question but maturing thereafter; that notice after the sale would not defeat any equity already existing between the purchaser and the seller; that defendant had such equity; that the purchaser had a right to buy the goods for the purpose of obtaining payment of his debt, and the right to set off. The court said: " The principal may no doubt come in at any time after the sale, and arrest all further dealing between his agent and the vendee; and if after notice from the principal, the vendee pays the agent, or acquires a demand against him, he cannot set that up as a defense in an action by the owner of the goods. But notice after the sale will not defeat any equity already existing between the vendee and the agent. The defendants had such an equity. They

18

bought the goods for the very purpose of obtaining payment of their debt against Morris; and the right to set off the note, though inchoate at the time of sale, became perfect before the suit was commenced." (See, also, *McLachlin* v.`Brett*, 105 N. Y. 391; *Wright* v. *Cabot*, 89 N. Y. 570.)

The defendant herein dealt with the importer, it may well be, in order to obtain a credit on the accounts between them. After it had accepted the goods, it was too late for the bank to give notice that it was the owner of the goods. Defendant had a right to know with whom it was dealing when it took in the goods. After the equities existing between the parties had been fixed, it was too late for the undisclosed principal to assert its adverse rights. It is not a case where it makes no difference to the purchaser to whom he pays the price of the goods. If the bank's position is upheld, defendant will owe $18,000 more than it had a right to expect it owed when it took the goods.

The purchaser was at least entitled to show, if it could, that it had a prior agreement with the importer with regard to the acceptance of the goods and the setting off of claims owed by the importer to the purchaser.

It is also a question of fact herein whether the notice given by the bank to the purchaser and received by it on the day following the delivery of the goods was an adequate notice that the bank was the undisclosed principal with whom the purchaser had dealt. The letter inclosed trade acceptances and invoices of the importer and requested that the acceptances be accepted. The invoices recited that the merchandise was bought from the importer and contained the statement " trade acceptances to be presented by Foreign Trade Banking Corporation (plaintiff) and returned to them." Did this transaction give purchaser as matter of law notice or knowledge of facts sufficient to put it on notice? Did it fairly create an inference as to the existence of the

agency?   Of course such a demand might arouse a suspicion, but in itself it amounts at best to slight proof that the bank was the owner of the property which the purchaser claims to have purchased from the importer in good faith.   (*Wright* v. *Cabot, supra.*)

As a question of fact arises as to whether defendant had notice of the plaintiff's rights and the limitations of the agent's authority, it was error to direct a verdict for the plaintiff.

The judgments should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.