SYRIANI ET AL. *v.* GEBHART

[No. 123, October Term, 1949.]

*Decided April 14, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Edward A. Greenstein* and *Henry M. Decker, Jr.,* with whom was *F. Duncan Cornell* on the brief, for the appellants.

*Kenneth C. Proctor,* with whom were *Robert H. Archer, Jr., James B. Maginnis* and *France, Rouzer, Lentz & Harris* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by plaintiffs in a replevin case from a judgment on verdict for defendant for $3,350.

For many years plaintiffs and their predecessor have been New York importers and dealers in Persian rugs. Since 1942 they have sent rugs on consignment, for sale,

to Brand, Inc. or its predecessors, Boardwalk auctioneers and dealers in rugs and other merchandise at Atlantic City, retaining title till the rugs were sold. Before November, 1947 defendant had been going to Brand's place of business, "watching the auctions and buying some merchandise at private sale for a year or more", and was on familiar personal terms with Brand. In November, 1947 defendant bought a rug for $3,350, which was shipped to him at his residence in Baltimore County and paid for on November 28, 1947. The receipted bill contains, among others, the following statements, "If for any reason the above rug is not desired, it may be returned and full purchase price will be refunded within thirty (30) days from above date. H.A.B." "We are selling agents. Settlements with consignors are made 24 hours after a sale. This sale is complete and no refund made." Defendant says, "Mr. Brand would sell a rug and if it was a question of an outsize rug, Mr. Brand would tell the party that, if the rug did not fit the room, it could be returned and he would refund the purchase money. That was his agreement with me when I purchased this rug; and, when we put it on our living-room, we found that it was too large and we returned it." Defendant received from Brand a refund check, dated January 2, 1948, for the price of the rug, $3,350. The check was deposited on January 6, 1948 and was returned, marked "not sufficient funds." For reasons not shown the returned check was not received by defendant till about January 21, 1948. Referring to this rug, defendant says, "He sent it to me with another that he thought might please me. I told him that I would not cover the second rug, and he asked me to give him $1,000.00. I sent both back and got a refund of the $1,000.00. That first rug was purchased at auction, but the second rug was obtained at private sale." Elsewhere in defendant's testimony there is some confusion as to which rug was purchased at auction and which at "private sale", but the fact is not material. Defendant gave Brand a deposit of $1,000.00 "and the rug came

the morning after I bought the first one. * * *The second rug did not please me and the first one didn't fit." The bill for the second rug was dated November 29, 1947, was for $2,350.00, viz., $3,350.00 less deposit $1,000.00, and contained a similar statement as to return and refund of "full deposit." After defendant received these rugs he kept them "various times", "probably a month". He received his $1,000.00 deposit back; "I deposited that check and it went through; and right after that I received a check for $3,350 which I deposited."

After the $3,350 check had been deposited but before it was returned to defendant, Brand on January 13, 1948 talked with defendant by telephone, shipped him three rugs on approval and wrote him. "Pursuant to our telephone conversation this morning, I have located and shipped to you by express today, to Owings Mills, Md., three magnificent carpets which have never been used", naming prices of $3,350, $2,850 and $2,750 respectively, $8,950 in all, for them; "I wish you would phone me when you get back and Jane [Brand's wife] and I will be very happy to come down and see you all * * *." No payment or deposit was made for any of the three rugs and no bill sent. These rugs had been consigned by plaintiffs to Brand. There is no evidence who was the owner of the first $3,350 rug, in refund for which the bad check had been given.

After receipt of the three rugs by defendant, neither before nor after the check was returned and Brand became bankrupt did defendant either accept or reject them—or pay or offer to pay for them, with or without deduction of the $3,350 owing him by Brand on the bad check.

"Q. Did you at any time either reject or accept either or all of the three rugs involved in this last shipment? A. No, sir,—I did not accept them or reject them. I had opened the three rugs at different intervals and put down the two described as large rugs on the floor. After the check came back and he went into bankruptcy,

it stayed on the floor and nothing was done until Mr. Syriani came over to the farm with a Deputy Sheriff. * * *

"Q. You never took any action in respect to these three rugs? A. No, sir,—I never made up my mind.

"Q. Did you at any time since that notify him that you had accepted one of them, or had rejected all three of them? A. Whom could I notify when I don't know to whom the rugs belong,—I don't know whether they belong to Mr. Brand or not."

Defendant testified that when he received these rugs "there were no marks on them to indicate that they had belonged to anyone but Brand, Inc. I never had any idea in my mind that they were not Brand's." However, he had previously testified, "Q. Were there any marks on these rugs to indicate they were not Brand's rugs? A. Nothing but what he told any other purchaser,—Brand said the rugs did not belong to him. * * *", and he later testified, "Q. Did you ever hear him state that the commission was the only interest he had in this merchandise? A. I could not say that I did or did not, but I know it is true and he was interested in the commissions and I know that some of the merchandise was sold at auction and some at private sales". In the face of this testimony of defendant it would be difficult indeed to find, in his testimony or elsewhere, any escape from the conclusion that defendant had reasonable grounds to believe that the three rugs did not belong to Brand and could not be sold or transferred in payment of Brand's bad check. *Miller v. Lea*, 35 Md. 396, 405-407, 6 Am. Dec. 417; *Warner v. Martin* 11 How. 209, 228-229, 13 L. Ed. 667.

Defendant argues that (*a*) the first two rugs were delivered to him "on sale or return", the property passing on delivery (Code, Art. 83, sec. 37, Rule 3(1); *Spickler v. Marsh*, 36 Md. 222, 227-228; *Sturm v. Boker*, 150 U. S. 312, 328-330, 14 S. Ct. 99, 37 L. Ed. 1093), and therefore, (*b*) by an established course of dealing, the other three rugs were delivered on the same terms and the property

passed to defendant. As to the $3,350 rug paid for in full and returned, defendant's premise would seem to be correct, and we may assume, without deciding, that it is also correct as to the second rug, on which a deposit of $1,000 was paid. But the conclusion does not follow from the premise. There is no similarity between the delivery of the first two rugs and the delivery of the other three, no ambiguity about the last shipment to be explained by a previous course of dealing. Where there is a contract to sell specific goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. Art. 83, sec. 36(1). Unless a different intention appears, when goods are delivered on approval the property passes to the buyer when he signifies his approval or acceptance to the seller, or does any other act adopting the transaction. Art. 83, sec. 37 Rule 3(2) (a). As to the three rugs there was never any contract to sell at all. They were delivered on approval only, no contract was signed, no money paid, no bill rendered, and defendant never signified his approval or acceptance or otherwise adopted the transaction.

The declaration alleges taking and detention of the three rugs, "the goods and chattels of" plaintiffs. Defendant pleaded (1) *non cepit*, (2) property in defendant, (3) the common traverse (*Poe* on *Pleading*, § 645), and (4) set-off. The plea of set-off alleges purchase from Brand of the $3,350 rug, return of the rug, receipt, deposit and return of Brand's check, shipment meantime of the three rugs "on approval", failure of Brand to make good its check, and that "defendant has retained title and possession of the three rugs * * * pending return of * * * defendant's $3,350 which has never been paid." The plea does not allege any connection of plaintiffs with the $3,350 rug or that defendant believed or had reason to believe that Brand was the owner of the three rugs or mention plaintiffs at all. A demurrer to the plea of set-off was overruled. A prayer of plaintiff for a directed verdict was refused, and after verdict a motion

for judgment *n. o. v.* was overruled. Other prayers offered by plaintiffs and defendant respectively were granted. The judge charged the jury that there were three possible verdicts that they could render,—"first, a verdict for the plaintiff, in which you will say that he is the owner of these rugs; second, a verdict for the defendant, in which you will decide that the plaintiff is not entitled to the rugs; and third, a verdict for $3,350, which is the amount of the check mentioned in the testimony." The jury chose the third alternative; their verdict was for defendant for $3,350. Opposing counsel seem to agree that the intended effect of the verdict was that plaintiffs own the rugs, but owe defendant $3,350. We are unable to find this result in the verdict, which seems to leave ownership of the rugs undetermined. It is admitted, though the record does not show that both parties objected to all adverse rulings on the prayers. There were no objections to the oral charge.

The demurrer to the plea of set-off should have been sustained, and plaintiffs' prayer for a directed verdict and their motion for judgment *n. o. v.* should have been granted. We find in the evidence no basis for any right or title to the rugs or lien against them on defendant's part or any claim against plaintiffs. Manifestly mere possession of plaintiffs' rugs, without right, gave defendant no lien on them for Brand's debt. On the other hand, as we have indicated, even if defendant had bought the rugs from Brand, he had reasonable grounds to believe that Brand was but an agent. His bare assertion, "I never had any idea in my mind that they [the rugs] were not Brand's" cannot stand against his own statement that Brand told purchasers the rugs did not belong to him, and his knowledge that the commission was the only interest Brand had in the rugs.

On this subject one of the leading American cases is *Miller v. Lea,* 35 Md. 396, 6 Am. Dec. 417, in which the court, by Judge Alvey, said, "The general proposition is well settled that 'where a principal permits an agent to sell as a parent principal and afterwards intervenes,

the buyer is entitled to be placed in the same situation at the time of the disclosure of the real principal as if the agent had been the real contracting party, and is entitled to the same defense, whether it be by common law or by statute, payment or set-off, as he was entitled to at that time against the agent, the apparent principal.' *Isberg v. Bowden,* 8 Exch. 852; *George v. Claggett,* 7 Term, 359; *Carr v. Hincliff,* 4 B. & Cr. 551; *Sims v. Bond,* 5 B. & Ad. 393; *Fish v. Kempton,* 7 M. G. & S. 687.

"But while this is the general principle that applies to such cases, the buyer must be cautious, and not act regardless of the rights of the principal, though undisclosed, if he has any reasonable grounds to believe that the party with whom he deals is but an agent. Hence, if the character of the seller is equivocal; if he is known to be in the habit of selling sometimes as principal and sometimes as agent, a purchaser who buys with a view of covering his own debt and availing himself of a set-off, is bound to inquire in what character he acts in the particular transaction; and if the buyer chooses to make no inquiry, and it should turn out that he has bought of an undisclosed principal, he will be denied the benefit of his set-off. Addison on Cont. 1191. If by due diligence the buyer could have known in what character the seller acted, there would be no justice in allowing the former to set-off a bad debt at the expense of the principal. *Fish v. Kempton,* 7 M. G. & S. 687." 35 Md. 406-407, 6 Am. Dec. 417. *Miller v. Lea* is quoted in *Mechem* on *Agency,* (2d Ed.) Sec. 2079, and *Williston* on *Contracts* (Revised Ed.), § 291. *Cf. Restatement, Agency,* §§ 4, 299, 306 (1).

The Factors' Act, (Code, Art. 2, secs. 1-11; Act of 1825, ch. 182; *cf.* 6 Geo. IV, ch. 94), if applicable, would not help defendant's case. Generally speaking, such statutes did not "alter the common law, so as to give validity to a sale made by the factor for an antecedent debt due by him to the persons with whom he contracts"; they did not "give to a purchaser protection, whether he knew or not that the goods which the factor contracted

to sell him were not the factor's and belonged to his principal." *Warner v. Martin,* 11 How. 209, 228, 13 L. Ed. 667; *cf.* Art. 2, secs. 4-8. Section 7 "was intended to apply to cases * * * where sales or contracts of sales have been made by agents, known to be acting as such, who become insolvent before the payment of the purchase money * * *. * * * it was [not] the intention of the Legislature to restrict the right of set-off as it previously existed, in cases of sales made by agents, who were honestly supposed by the buyers at the time to be acting as principals or owners." *Miller v. Lea, supra,* 35 Md. at page 408, 6 Am. Dec. 417.

However, as we have also indicated, there was no sale at all of the rugs by Brand to defendant before—or after—defendant had notice of Brand's insolvency and plaintiffs' ownership of the rugs. Even when a prospective purchaser believes that the agent is the owner and has no reason to believe the contrary, if the principal is disclosed before the goods are delivered or payment made, the purchaser cannot set-off against the price his debt against the agent. "* * * the authorities stand upon just principles when they assert that the set-off is lost if the principal is disclosed before the goods are delivered or the payment made. The vendee is not then acting in the dark, and has his liberty of action remaining, at least, where his interests may be affected by the change of creditors, and so can have no equity to use the goods of one man to pay the debt of another. If he refuses, as he may, his contract relation with his vendor remains, and all his rights and remedies under it. But if he accepts he cannot complain that his rights are changed and harmed, since the acceptance is his free and voluntary act, made with full knowledge, and without being misled.." *McLachlin v. Brett,* 105 N. Y. 391, 397, 12 N. E. 17, 19; *cf. Greer v. Downes Supply Co.,* [1927] 2 K. B. 28, 32. The rugs were delivered on approval only and have never been accepted. They have never been sold by Brand to defendant and cannot now be sold—without even payment—by the verdict of a jury. The de-

murrer to the plea of set-off should have been sustained, and a verdict on that issue directed for plaintiffs.

On the question of property or right of possession, defendant was told by Brand that the rugs did not belong to him and has offered no evidence of property in him or in Brand. Not only is plaintiffs' evidence uncontradicted but the facts are uncontroverted and undisputed. *Cf. Lemp Brewing Co. v. Mantz,* 120 Md. 176, 184-186, 87 A. 814, with *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 577-578, 51 A. 2d 288. A verdict should have been directed for plaintiffs on all issues, including property or right of possession. *Poe* on *Practice,* § 445.

> *Judgment reversed, with costs, and judgment entered for plaintiffs for the property replevied.*