**OIL SUPPLY COMPANY, INC.,**
Appellant–Plaintiff,

v.

**HIRES PARTS SERVICE, INC., d/b/a**
Hires Auto Parts, Appellee–
Defendant.

No. 02A05–9512–CV–506.

Court of Appeals of Indiana.

Aug. 30, 1996.

**88**

Rick L. Sprunger, Berne, for appellant–plaintiff.

Eric E. Snouffer, Fort Wayne, for appellee–defendant.

SHARPNACK, Chief Judge.

Oil Supply Company, Inc. ("Oil Supply") appeals the trial court's award of $820.80 in its favor. Oil Supply brought this action against Hires Parts Service, Inc., d/b/a Hires Auto Parts ("Hires"), seeking payment for a shipment of goods. Oil Supply raises three issues for our review, which we restate as:

1) whether Hires was entitled to a set off against the amount claimed by Oil Supply for the amount Hires credited the account of William Dolin, the undisclosed agent of Oil Supply;

2) whether the trial court erred in not applying the doctrine of ratification; and

3) whether Oil Supply is entitled to prejudgment interest on the entire principal balance due.

We affirm and remand.

The facts are not in dispute. Oil Supply is a wholesale distributor of automotive parts and accessories, including antifreeze. Hires is a retail distributor of automotive parts and accessories, including antifreeze. William Dolin d/b/a/ Evergreen Management ("Dolin") is a commodities broker who buys and sells products in the automotive aftermarket.

In the spring of 1988, Oil Supply purchased some products from Dolin. Oil Supply also sold some products to Dolin. The general manager of Oil Supply intended for this sale to offset the purchases made from Dolin. However, Oil Supply's accounting department mistakenly paid Dolin for the purchases. To work out Dolin's indebtedness to Oil Supply as a result of the overpayment, Oil Supply allowed Dolin to sell products for it on commission with the provision that a portion of the commissions would be applied to the debt.

Unbeknownst to Oil Supply, Dolin was also indebted to Hires for approximately $28,-000.00. To satisfy this debt, Dolin represented to Hires in October of 1988 that he had

720 cases of antifreeze he would ship to Hires in exchange for a release of his indebtedness. Hires agreed to this arrangement.

After entering into the agreement with Hires, Dolin telephoned the general manager of Oil Supply and stated, "I got an order here, Hires Automotive, Fort Wayne, Indiana. Ship them 720 cases of antifreeze, no matter what it is." Record, p. 217. After running a credit check on Hires, Oil Supply shipped the antifreeze to Hires. On November 7, 1988, Hires received and signed for the shipment. Upon receiving the antifreeze, Hires credited Dolin's account.

After Hires refused to pay Oil Supply for the shipment, Oil Supply initiated this action. Oil Supply now appeals the trial court's judgment awarding it $820.80, which represents only the difference between the total amount due for the shipment and the amount by which Hires credited Dolin's account.[1]

I.

The first issue Oil Supply raises for our review is whether the trial court erroneously determined that Hires was entitled to set off against the claim of Oil Supply the amount Hires had credited to the account of Dolin. Specifically, Oil Supply contends that Dolin's actions were unauthorized because they were beyond the scope of the commission arrangement to which the parties had agreed. As a result, Oil Supply concludes that it "should not be compelled to bear the loss in this case." Appellant's brief, p. 13.

In its order, the trial court found:

"Dolin and Oil Supply had entered into an agency relationship ... Oil Supply allowed Dolin to sell product on behalf of Oil Supply....

In the transaction between Hires, Dolin, and Oil Supply, Dolin was an undisclosed agent and Oil Supply was his undisclosed principal ... The evidence shows that Dolin never informed Hires of the fact that Oil Supply owned the antifreeze, or even the fact that Oil Supply existed. Dolin did not disclose to Hires his agency relationship with Oil Supply. The evidence shows that Oil Supply did not contact Hires prior to its shipping the antifreeze to Hires....

· The Indiana Supreme Court has held that 'where the principal is not disclosed, the right to sue is hampered; for, if the party has acted upon the faith that the agent was the real party interest, and was acting on his own behalf, then the principal receives his right of action, subject to all equities growing ·out of the transaction which may exist against the agent.' ....

As a general rule, one who contracts with the agent of an undisclosed principal, supposing that the agent is the real party in interest, and not being chargeable with notice of the existence of the principal, is entitled, if sued by the principal on the contract, to set up any defenses and equities which he could have set up against the agent had the latter been in reality the principal suing on his own behalf. Various reasons have been assigned for this rule, such as the estoppel of the undisclosed principal, or the fact that the undisclosed principal must assume the position of the agent and step into his shoes, or that the principal, by permitting the agent to contract in his own name without disclosing the agency, has enabled him to perpetrate a fraud upon third persons, and thus the rule applies where one of two innocent persons must suffer from the fraud of a third person, the loss should fall upon the person whose act or negligence enabled the fraud to be committed. But whatever the reason for the rule, the rule itself is clear and the principal, under the rule, must take the contract as he finds it and be governed by its terms, and cannot enforce rights under it which the contract does not give to the agent.

It is also the generally accepted rule that where a third person contracts with an agent who has not given notice to such third person of his agency, the person may

---

1. This is the second time this cause has been before this court. In the initial appeal, we reversed the trial court's entry of summary judgment in favor of Oil Supply because we found genuine issues of material fact and remanded the case for further proceedings. Upon remand, the trial court considered the stipulation of evidence, which was the only evidence presented at trial, in rendering judgment in favor of Oil Supply.

set off a debt or claim due to him from such agent personally in an action on the contract by the undisclosed principal. . . .

In the case at hand Hires was not given notice of Dolin's agency. Therefore, Hires is entitled to set off the debt due to it, from Dolin personally, in this action by Oil Supply. Oil Supply claims Hires owes a debt to Oil Supply in the amount of $28,-900.80. Hires released the debt owed to it by Dolin in the amount of $28,080.00. When these amounts are set off, a difference of $820.80 results.

 &ast; &ast; &ast; &ast; &ast; &ast;

Judgment is therefore entered for the Plaintiff ... and against the Defendant ... in the sum of $820.80. . . ."

Record, pp. 373–375 (citations omitted). Oil Supply argues that "if the agent's actions were unauthorized, it makes no difference whether or not any agency relationship was disclosed." Appellant's brief, p. 11. In other words, Oil Supply contends that it should not be forced to bear the loss because Dolin's actions were unauthorized, regardless of whether the agency relationship had been disclosed to Hires.[2] We disagree.

■ At the outset, Oil Supply's contention that Dolin's acts were unauthorized is merely a request to reweigh the evidence. We cannot do so. See *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994). We consider only the facts most favorable to the judgment in determining whether it is clearly erroneous. *Id.*

■ Furthermore, contrary to Oil Supply's contentions, the resolution of the issue of whether Dolin's acts were unauthorized is not dispositive in our evaluation of the trial court's judgment. Oil Supply relies exclusively on *Allegheny Mutual Casualty Co. v. Franklin*, 513 N.E.2d 658 (Ind.Ct.App.1987), in support of its argument that a principal is not bound by the unauthorized acts of its agent. While we agree with the general principle for which the case is cited, we note

that the case is distinguishable from the facts before us. In *Allegheny*, the principal insurance company was the defendant in the case brought by the third party client. We found that the principal was not bound by the acts of its special agent who arranged an insurance agreement with the third party. *Id.* at 659. This action was beyond the scope of the special agent's limited authority as expressed in the power of attorney authorizing the agent to act. The agency relationship was disclosed, and the third party was aware that the agent was representing the principal. We noted that a third party who deals with a special agent has a duty to ascertain the extent of the agent's authority before dealing with him. *Id.* We concluded that the third party had failed to ascertain the extent of the agent's authority, so the principal was not bound by the unauthorized acts of the agent. *Id.*

■ However, the duty imposed on third parties to ascertain the authority of a special agent is generally only applied in cases where the agency relationship is disclosed to the third party. See *id.*; *Oklahoma v. West*, 796 P.2d 1178, 1180 (Okla.Ct.App.1990). This rule is logical because a third party cannot have a duty to investigate the authority of an agent if the third party is unaware that an agency relationship exists. In this case, the agency relationship was not disclosed, and Hires did not know that Dolin was acting as the agent of Oil Supply. Consequently, Hires had no opportunity or reason to ascertain the extent of Dolin's authority because it was not aware that another party was involved. In addition, Oil Supply is the plaintiff in this case, suing on a contract that, by its own argument, it is not bound to because of the unauthorized acts of Dolin. Thus, the circumstances of this case are quite different from those in *Allegheny*. Therefore, the notion that the principal is not bound by unauthorized acts of its agent is applied in a different context in *Allegheny*, and, as a result, *Allegheny* is not dispositive of the issue before us today.

2. We note that Oil Supply's argument is inherently contradictory. On the one hand, Oil Supply effectively considers Dolin's acts to be "authorized" so that it can enforce the deal arranged by Dolin and sue Hires for payment of the shipment. On the other hand, Oil Supply claims that Dolin's acts are "unauthorized" so that Hires loses the benefit of the set off against the total amount due for the shipment.

■ Even assuming, *arguendo*, Dolin's acts were unauthorized, the trial court did not err in concluding that Hires was entitled to set off the amount it credited Dolin against the total amount due for the antifreeze. The trial court found, and we agree, that where one of two innocent persons must suffer from the fraud of a third person, the loss should fall upon the person whose act or negligence enabled the fraud to be committed. *See Bischoff Realty, Inc. v. Ledford*, 562 N.E.2d 1321, 1324 (Ind.Ct.App.1990). This rule is grounded in sound notions of public policy. In *Bischoff*, we held that "as between two innocent parties, it is preferable to place the burden of an agent's fraud on the principal who hired him rather than on a third party stranger to the agency relationship." *Id.* We find this principle to hold true in the case before us today, especially because Oil Supply could have prevented Dolin's fraud by confirming the order with Hires before shipping the products. Consequently, because Dolin was Oil Supply's agent, the facts of this case are such that we must place the burden of his fraud on Oil Supply rather than Hires.

Furthermore, other jurisdictions have permitted a third party to set off a debt owed by an undisclosed agent in an action against it by an undisclosed principal, even where the acts of the undisclosed agent were unauthorized. *See Foreign Trade Banking Corp. v. Gerseta Corp.*, 237 N.Y. 265, 142 N.E. 607 (1923); *Frohlich & Newell Foods v. New Sans Souci Nursing Home*, 109 Misc.2d 974, 441 N.Y.S.2d 335, 338 (Civ.Ct.1981) (holding that when a third party has no notice of an agency relationship and deals with the agent in good faith and in reliance on the contract with the agent and the agent's possession of the goods, then the rights of the third party are not affected by the limitations on the authority of the agent). In *Foreign Trade*, the principal sued the third party for the balance due on a shipment of silk it received through the undisclosed principal's agent. The principal sent the silk to its agent under a trust receipt that the agent agreed to deliver the silk to the third party and return the proceeds to the principal. When the agent delivered the silk to the third party, the third party accepted the shipment of the silk as the property of the agent. On the same day, the principal sent invoices for the shipment to the third party. The third party refused to accept the invoices and returned them to the principal. Its reason was that the agent was indebted to it on other accounts for an amount in excess of the amount due on the silk transaction. The third party maintained that it had an agreement with the agent under which the third party agreed to set off the debt of the agent in exchange for the shipment of silk. It further contended that it had no notice of the principal's interest in the silk at the time the silk was delivered.

The trial court directed a verdict for the principal. *Foreign Trade*, 142 N.E. at 609. The New York Court of Appeals reversed and remanded the case for a new trial after finding that there was a question of fact as to whether the third party had notice of the principal's rights and the limitations of the agent's authority. *Id.* at 610. In reaching its decision, the court stated:

"If the [third party], acting innocently and in good faith, with no notice or knowledge, sufficient to put it on inquiry, of the agreement between the [principal] and the [agent], dealt with the agent in reliance on its contract to purchase the silk from it and the possession of the goods, the rights of the [third party] are not to be affected by the subsequent disclosure of an unknown principal and the limitations on the authority of the agent."

*Id.* at 609. The court further stated that the principal might have protected itself if it had not given to the agent the power to deceive innocent persons. *Id.* Finally, the court noted that on remand, the third party was entitled to show that it had a prior agreement with the agent with regard to the acceptance of the goods and the setting off of claims owed by the agent to the third party. *Id.* at 610.

■ As in *Foreign Trade*, the case before us involves an agent who acted beyond the scope of his authority and who failed to disclose his agency relationship to the third party, Hires. The record indicates that Hires credited Dolin's account in good faith. Therefore, applying the principles set forth

in *Foreign Trade,* Hires should be considered to have acted innocently as compared to the principal and should not bear the loss. This determination is especially true given that Oil Supply allowed Dolin to sell its products and did not put Hires on notice of its existence by confirming the order before shipping. Hence, pursuant to the approach that the rights of a third party are not to be affected by the "subsequent disclosure of an unknown principal and the limitations on the authority of the agent," Hires' payment in the form of the credit to Dolin's account can be set off against the balance owed to Oil Supply even if Dolin's actions were unauthorized. *See id.* at 610.

Therefore, after carefully considering the case law and the strong public policy for protecting innocent third parties, we find that the trial court did not err by permitting Hires to set off the credit given to Dolin's account, regardless of whether Dolin's acts were unauthorized.

## II.

■ The second issue for our review is whether the trial court erred in not applying the doctrine of ratification to the facts of this case. Oil Supply argues that Hires ratified Dolin's actions of ordering on its behalf 720 cases of antifreeze from Oil Supply by accepting and signing for the shipment. As a result of the ratification, Oil Supply contends that Hires is not entitled to set off the credit given to Dolin against the total debt owed to Oil Supply for the shipment. We disagree.

■ Ratification is a question of fact and is defined as "the adoption of that which was done for and in the name of another without authority." *Beneficial Mortgage Co. v. Powers,* 550 N.E.2d 793, 796 (Ind.Ct.App. 1990), *reh'g denied, trans. denied.* Ratification is based on the existence of three essential elements:

1) an unauthorized act performed by an individual for and on behalf of another and not on account of the actor himself,

2) knowledge of all material facts by the person to be charged with said unauthorized act, and

3) acceptance of the benefits of said unauthorized act by the person to be charged with the same.

*See id.* All three elements must be satisfied for ratification principles to apply.

Oil Supply contends that all of the elements are satisfied in this case. With respect to the first element, Oil Supply states only that "Dolin had no authority to order a load of antifreeze from Oil Supply for and on behalf of Hires Auto . . . ." Appellant's brief, p. 13. Oil Supply concentrates its argument on the second element of the ratification test, arguing that the shipping receipt signed by Hires was sufficient to demonstrate that Hires was "shown to have knowledge of facts which would lead a person of ordinary prudence to investigate further." Appellant's brief, pp. 14–15. Oil Supply contends that Hires should have investigated the shipment because Oil Supply's name was on the shipping receipt rather than Dolin's. With respect to the third element, Oil Supply states only that "Hires Auto did not return the shipment to Oil Supply but elected to keep it instead." Appellant's brief, p. 13.

However, the trial court's findings of fact and conclusions thereon are inconsistent with the application of ratification principles. The trial court stated in part that:

"Dolin and Oil Supply had entered into an agency relationship . . . Oil Supply allowed Dolin to sell product on behalf of Oil Supply. . . .

In the transaction between Hires, Dolin, and Oil Supply, Dolin was an undisclosed agent and Oil Supply was his undisclosed principal . . . The evidence shows that Dolin never informed Hires of the fact that Oil Supply owned the antifreeze, or even the fact that Oil Supply existed. Dolin did not disclose to Hires his agency relationship with Oil Supply. The evidence shows that Oil Supply did not contact Hires prior to its shipping the antifreeze to Hires. Oil Supply did not disclose that it was the principal in this transaction or that Dolin was acting as its agent. The mere fact that Oil Supply is listed as the shipper on Exhibit "D" was not sufficient to alert Hires to Oil Supply's interest in the transactions as principal."

Record, pp. 373–374. These determinations, in effect, reject the application of ratification principles.

■ First, the trial court found that Oil Supply was the principal in the transaction between the parties and that Dolin was acting as Oil Supply's agent. Generally, "ratification must be by the person identified as the principal at the time of the original act or, if no person was then identified, by the one for whom the agent intended to act, and such person must be one who had the power to authorize the act when it was done and has the power to confer such authority at the time of ratification." 3 Am.Jur.2d *Agency* § 181 (1986). By determining that Oil Supply was the principal rather than Hires and that Dolin was Oil Supply's agent, the trial court rejected Oil Supply's theory that Hires was the principal to the extent that it ordered Dolin to supply goods to it.

Second, the trial court found that the shipping receipt was not sufficient to alert Hires to Oil Supply's interest in the transaction. The unauthorized act of an agent can only be ratified when the person ratifying had knowledge of all material facts. *Allegheny*, 513 N.E.2d at 659; *Floyd v. Jay County Rural Elec. Membership Corp.*, 405 N.E.2d 630, 633 (Ind.Ct.App.1980). The trial court clearly determined that the shipping receipt alone was insufficient to alert Hires as to Oil Supply's involvement. Because the trial court found that Hires did not have knowledge of Oil Supply's involvement, Hires could not be charged with Dolin's unauthorized acts under the principles of ratification.

■ Therefore, because ratification is a factual question, Oil Supply's argument that the trial court "erred in not applying the doctrine of ratification to the facts of this case" is actually a request to reweigh the evidence, which we cannot do. Appellant's brief, p. 1; *see Chidester*, 631 N.E.2d at 910. Instead, we will disturb a judgment only when it is clearly erroneous because there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* Here, the determinations of the trial court are supported by the evidence, all of which was stipulated to by the parties before trial. Moreover, it was reasonable for the trial

court to infer from the evidence presented that Hires did not ratify Dolin's acts. Consequently, Oil Supply failed to prove that the trial court judgment is clearly erroneous.

III.

■ The final issue for our review is whether Oil Supply is entitled to prejudgment interest on the entire principal amount. Oil Supply relies in part on Ind.Code § 24–4.6–1–103 in support of its argument that it is entitled to prejudgment interest. However, this section provides:

"Interest at the rate of eight percent (8%) per annum shall be allowed:

(a) From the date of settlement on money due on *any instrument in writing* which does not specify a rate of interest and which is not covered by IC 1971, 24–4.5 or this article;

(b) And from the date an itemized bill shall have been rendered and payment demanded on an account stated, account closed or for money had and received for the use of another and retained without his consent."

I.C. § 24–4.6–1–103 (emphasis added). As there is no settlement on an instrument in writing and no account stated between the parties in this case with respect to the shipment of goods, I.C. § 24–4.6–1–103 does not apply to these facts. *See Thomas J. Henderson, Inc. v. Leibowitz*, 490 N.E.2d 396, 399 (Ind.Ct.App.1986) (defining account stated as "an agreement between parties that all items of account and the balance struck are correct, together with a promise, express or implied, to pay the balance").

■ However, Indiana courts have long held that a statute is not the exclusive authority for prejudgment interest. *See Erie–Haven, Inc. v. Tippmann Refrigeration Construction*, 486 N.E.2d 646, 651 (Ind.Ct.App.1985); *Moridge Manufacturing Co. v. Butler*, 451 N.E.2d 677, 682 (Ind.Ct.App. 1983). Many cases have awarded prejudgment interest in the absence of a statute authorizing such an award where the damages were "ascertainable in accordance with fixed rules of evidence and accepted standards of valuation" at the time the damages

accrued. *See, e.g., Dale Bland Trucking, Inc. v. Kiger,* 598 N.E.2d 1103 (Ind.Ct.App. 1992), *trans. denied; Wedge v. Lipps Industries, Inc.,* 575 N.E.2d 332 (Ind.Ct.App.1991); *Erie–Haven,* 486 N.E.2d at 646. Once the trier of fact determines that a party is liable for damages, "prejudgment interest is proper only where a simple mathematical computation is required." *Bland Trucking,* 598 N.E.2d at 1106. An award of prejudgment interest rests on a factual determination, and we may only consider the evidence most favorable to the appellee. *Harlan Sprague Dawley v. S.E. Lab Group,* 644 N.E.2d 615, 617 (Ind.Ct.App.1994).

 In addition, an award of prejudgment interest is justified only where there has been an unreasonable delay in payment of an ascertainable amount. *See id.; Holland v. Miami Systems, Inc.,* 624 N.E.2d 478, 481 (Ind.Ct.App.1993), *trans. denied; Northern Indiana Public Service Co. v. Stokes,* 595 N.E.2d 275, 279 (Ind.Ct.App. 1992); *Gibson–Lewis Corp. v. Northern Indiana Public Service Co.,* 524 N.E.2d 1316, 1319 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* The "ascertainable" amount refers to the amount of damages rather than the liability for those damages. *City of Indianapolis v. Twin Lakes Enterprises,* 568 N.E.2d 1073, 1087 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* Thus, where a good faith dispute exists concerning a portion of a claim, interest should be "limited to the undisputed (ascertainable) portion of the claim." *Stokes,* 595 N.E.2d at 279.

Here, the determination of damages dealt with known amounts and the amount due Oil Supply depended only on whether Hires could deduct the amount credited to Dolin. The determination of that issue left the amount of $820.80 due to Oil Supply. The trial court should have awarded prejudgment interest on that amount.

For the foregoing reasons, we affirm the judgment of the trial court, but remand to the trial court to award prejudgment interest.

Affirmed and remanded.

RILEY, J., concurs.

SULLIVAN, J. dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The facts as recited in the earlier appeal are binding upon the parties. Although the "law of the case" doctrine is discretionary with this court, the parties are not at liberty to contest facts which have already been determined and which formed the basis of an earlier appellate decision. *Certain Northeast Annexation Area Landowners v. City of Fort Wayne* (1993) Ind.App., 622 N.E.2d 548, 549, *trans. denied.*[3]

In the recitation of facts, the August 30, 1993 memorandum decision noted:

"Hires acknowledged delivery of the antifreeze by signing a memorandum which listed Oil Supply as the shipper and consignee.[4] Customer Equipment was listed as the carrier. Dolin's name was nowhere on the memorandum. *After receiving the antifreeze* Hires released Dolin on his debt as per their previous agreement." *Hires Parts Serv. v. Oil Supply Co.* (1993) Ind. App., 619 N.E.2d 612 (emphasis supplied).

Despite having notice of Oil Supply's involvement, Hires never made inquiry and neither returned the merchandise to Oil Supply nor paid for it. Instead, Hires kept the shipment and discharged Dolin's personal debt.

The timing of the various events which took place is of importance because until the goods were shipped and received, Oil Supply was the undisclosed principal of Dolin. However, when those goods were received and signed for, Hires had reason to know of an agency relationship. This fact is in turn important because as noted, Hires did not

---

3. Although the earlier appeal was resolved by a memorandum decision, that decision has precedential effect with respect to application of principles of res judicata or law of the case. Ind. Appellate Rule 15(A)(3).

4. Use of the term "consignee" in relation to Oil Supply is explained by the fact that in filling the order, Oil Supply directed its antifreeze contract blender, Kinpac, Inc., to ship the cases of antifreeze, out of its inventory, directly to Hires. Thus Oil Supply was the consignee only as to Kinpac.

release Dolin's personal debt until after the goods were received. Accordingly, we deal here in part with principles governing an undisclosed agency, and in part with principles governing the disclosure of an agency relationship after a commercial transaction was initiated but before it had been completed.

Because of the hybrid nature of the legal analysis required in this case, it is difficult to isolate principles of apparent or implied authority which are applicable when the agency is fully or partially disclosed from principles which apply to unauthorized acts of an agent for an undisclosed principal. Whether a principal is disclosed, partially disclosed or undisclosed is very fact sensitive and depends upon the facts and circumstances surrounding the transaction. *Brown v. Owen Litho Serv., Inc.* (1979) 179 Ind.App. 198, 202, 384 N.E.2d 1132, 1135. For this reason, although the facts are not essentially in dispute, my dissent utilizes well-settled principles drawn from both disclosed and undisclosed principal situations.

The authority of an agent includes only authority to act for the benefit of the principal. 3 Am.Jur.2d *Agency* § 71 (1986). It is therefore obvious that the agent has no authority to act to the detriment of the principal. Furthermore, in business matters, as a general proposition, an agent has no authority to seek personal advantage other than through the faithful performance of his duties. Restatement (Second) of Agency § 39 (1957). Disputes in this regard are easily solved as between agent and principal. They are not so easily resolved, however, when the dispute is between the principal and a third party. It is in the latter situation that issues of disclosure, apparent authority and the like become involved.

In situations involving disclosed or partially disclosed agency relationships, a principal may be liable for unauthorized acts of his agent if the agent had apparent authority to so act. To establish apparent authority there must be some communication *by the principal* which instills a reasonable belief of the agent's authority in the mind of the third party. *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.* (1993) Ind.App., 626 N.E.2d

821, 826, *trans. denied.* Statements or representations by the purported agent are insufficient to create apparent authority. *State Farm Mut. Auto. Ins. Co. v. Gonterman* (1994) Ind.App., 637 N.E.2d 811, 815. Here, however, there is no issue of "apparent authority" because at the time of the initial agreement made between Dolin and Hires, no reasonable purchaser would infer that Dolin had authority from a principal, if such existed, to barter Oil Supply's product in satisfaction of Dolin's personal debt. But see *Excel Furniture Co. v. Brock* (1917) 63 Ind. App. 494, 114 N.E. 701. The position of Hires in the first appeal was and is now that Hires dealt directly and personally with Dolin for purchase of antifreeze and that it had no business relationship with Oil Supply. That position is undercut by Hire's contention, also made in the initial appeal, that "Dolin had authority to accept payment for Oil Supply". *Hires Parts Serv. v. Oil Supply Co.,* (1993) Ind.App., 619 N.E.2d 612.

Hires cannot have it both ways. As earlier noted, Hires knew of Oil Supply's involvement in the antifreeze transaction at least by the time it accepted the shipment and before it forgave the debt owed by Dolin. In any event it would seem logical, in applying principles of apparent authority, that even if it were reasonable for Hires to infer that Dolin had authority to accept payment for Oil Supply, it would be unreasonable to infer that such authority included the right to barter the product for Dolin's own personal debt.

As stated in *Miladin v. Istrate* (1954) 125 Ind.App. 46, 53–54, 119 N.E.2d 12, 17, *reh'g denied,* 125 Ind.App. 46, 119 N.E.2d 901:

"'[I]n the absence of express authority or custom to the contrary, the power of an agent authorized to collect or receive payment is limited to receiving that which the law declares to be legal tender, or which is by common consent considered and treated as money.... It is settled that an agent having authority merely to receive payment of an obligation ... is not authorized to take chattels or merchandise in payment.'" (quoting 2 Am.Jur. *Agency* § 165–66.)

This being the general rule, it stands to reason that a third party may not, in the

belief that an agent has authority to collect payment, effect satisfaction of the debt owed to the principal by forgiving a personal debt of the agent. Again, it has been stated as a general principle that "[t]he authority to sell the principal's personal property does not include within its scope the authority to apply or transfer the property in payment of the agent's own debt, and one who so takes the property, though in good faith, cannot ordinarily hold the same against the principal." 3 Am.Jur. *Agency* § 111.

Another general principle deemed applicable here is stated in 3 Am.Jur. *Agency* § 301:

"A person who knowingly receives . . . property of a principal from an agent in payment of the latter's debt does so at his peril; and if the agent acts without authority, the principal, on proof of these facts, is entitled to recover."

The third party must know or have reason to know that the property is that of the principal. *Id.* Here it is clear that when Hires accepted shipment of the product it knew that Oil Supply was the shipper and that Dolin's name was not in any way associated with the transaction. The situation is not unlike that in *Robinson v. Anderson* (1886) 106 Ind. 152, 6 N.E. 12, the most closely analogous Indiana case. There, a certain machine was ordered by Anderson from Robinson. The order was placed through Robinson's agent. When the machine was delivered, Anderson, in payment, gave to the agent promissory notes payable to Robinson. Thereafter, those notes were surrendered by the agent to Anderson without Robinson's endorsement or other authorization and were replaced by notes payable to the agent himself. The Supreme Court held that invalidity of the verdict for Anderson upon Robinson's claim for payment was "clear beyond any question." 106 Ind. at 155, 6 N.E. at 14. The court stated that:

"An agent having authority to collect a debt cannot be supposed to have the right to take as payment the note of the debtor payable to himself, thus substituting himself as creditor in the room [sic] of his principal. . . . That a debt may be paid by the execution of the negotiable promissory note of the debtor, may be conceded, but

the execution of such note to a third person, without the consent of the creditor, has no resemblance of payment." 106 Ind. at 156, 6 N.E. at 14..

Similarly, where, as in this case, the purchaser accepts goods from a named shipper and instead of forwarding payment or awaiting invoice from the shipper, purports to satisfy the debt through cancellation of a personal debt of the seller's agent, there is "no resemblance of payment."

When a principal is undisclosed, a third person may set up any defenses he has as against the agent upon the rationale that where one of two innocent persons must suffer from the fraud of an agent the loss should fall upon the person whose act permitted the fraud to be committed, i.e., the principal. *Stump v. Indiana Equip. Co.* (1992) Ind.App., 601 N.E.2d 398, 403, *trans. denied;* 3 Am.Jur.2d *Agency* § 341. This principle does not apply, however, if the party seeking refuge in the principle has wittingly or otherwise aided an unscrupulous agent to defraud the principal.

In *Hamilton Nat'l Bank v. Nye* (1906) 37 Ind.App. 464, 77 N.E. 295, a purchaser of goods issued a check payable to the seller and delivered the check to the agency. Instead of forwarding the check to the principal, the agent indorsed the check in the principal's name. Although the purchaser was not shown to be at fault with regard to the transaction, it was held that the bank which obtained the check in good faith and for consideration could not enforce it against the original maker. Although the case is not analogous on its facts, it is instructive in that if the purchaser of the goods, as maker of the check, was held not liable upon the check issued in the name of the seller, it would seem to follow that the purchaser had not satisfied his debt to the seller-principal.

It is also the generally accepted rule that where a third person contracts with an agent who has not given notice to the third person of his agency, the third person may set off a debt or claim due him from the agent personally in an action on the contract by the undisclosed principal. Restatement (Second) of Agency § 306. Again, however, the set off may not be imposed against the principal in a

situation such as before us. A purchaser from an agent having neither the possession or indicia of property in himself may not set off a debt due him from the agent when sued by the undisclosed principal. The reason for the rule is that the absence of apparent title should put the purchaser on inquiry as to the true status of the agent in the matter. 3 Am.Jur.2d *Agency* § 343. Clearly, no such set off is available where, as here, "before the contract has been consummated by delivery and acceptance of the goods, or at least before the party dealing with the agent has, by making payment or otherwise, altered his position or incurred some disadvantage[.]" *Id.* The same rule was articulated as follows in *Syriani v. Gebhart* (1950) 195 Md. 69, 72 A.2d 766, 770:

> "Even when a prospective purchaser believes that the agent is the owner and has no reason to believe the contrary, if the principal is disclosed before the goods are delivered or payment made, the purchaser cannot set-off against the price his debt against the agent."

These related concepts are unmistakably synthesized and made applicable to the facts before us as set forth in Restatement § 306, supra:

> "(2) If the agent is authorized only to contract in the principal's name, the other party does not have set-off for a claim due him from the agent unless the agent has been entrusted with the possession of chattels which he disposes of as directed or unless the principal has otherwise misled the third person into extending credit to the agent.

> \* \* \* \* \* \*

*Illustrations:*

> 1. A is authorized by P to contract to sell to T in P's name goods of which A does not have possession. A sells the goods in his own name and causes them to be delivered to T. At this time A owes T $500. In an action by P against T, T may not set off the claim which he has against A."

I would reverse and remand with instructions to enter judgment for Oil Supply in the full amount of the invoice purchase price together with interest thereon.